**DISABILITY RIGHTS IDAHO, INC.**
Amy Cunningham, ISB No. 5541
amy@disabilityrightsidaho.org
Courtney R. Holthus, ISB No. 8841
courtney@disabilityrightsidaho.org
1246 Yellowstone Ave. A3
Pocatello, ID 83201
Telephone: (208) 232-0922, ext. 203
Fax: (208) 232-0938
<u>*Attorneys for Defendant/Counter-Claimant*</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| IN THE MATTER OF DISABILITY RIGHTS IDAHO, INC.'S REQUEST FOR ADA COUNTY CORONER RECORDS RELATED TO THE DEATH OF D.T. | ) ) ) ) | Case No. 1:14-CV-369-EJL |
| ———————————————— | ) ) | |
| ERWIN SONNENBERG, in his official capacity as ADA COUNTY CORONER, and ADA COUNTY, | ) ) ) ) | DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS, MOTION |
| Plaintiffs, | ) ) | FOR JUDGMENT ON THE PLEADINGS, & MOTION FOR SUMMARY |
| DISABILITY RIGHTS IDAHO, INC., an Idaho nonprofit corporation, | ) ) ) | JUDGMENT |
| Defendant. | ) ) | |
| ———————————————— | ) ) | |
| DISABILITY RIGHTS IDAHO, INC., an Idaho nonprofit corporation, | ) ) ) | COUNTER-CLAIMANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT |
| Counter-Claimant, | ) ) | |
| vs. | ) ) | |
| ERWIN SONNENBERG, in his official capacity as ADA COUNTY CORONER, | ) ) ) ) | |
| Counter-Defendant. | ) ) | |
| ———————————————— | ) | |

Defendant and Counter-Claimant, DisAbility Rights Idaho, Inc. ("DRI"), by and through its attorneys of record, Amy Cunningham and Courtney R. Holthus, pursuant to Federal Rules of Civil Procedure 12(h)(3), 12(c), and 56, respectfully submits this Memorandum in Support of its Motions to Dismiss, for Judgment on the Pleadings, for Summary Judgment as to Plaintiff's Complaint and for Summary Judgment as to Counter-Claimant's Counterclaim, which are filed contemporaneously herein. Pursuant to the Court's instructions to the parties, all the Motions are addressed in this Memorandum.

## I.    INTRODUCTION

Pursuant to its statutory authority and obligation to investigate possible abuse and neglect of individuals with disabilities, DRI, Idaho's protection and advocacy system, has requested the Ada County Coroner ("Coroner") to provide it with certain records. The Coroner has declined and, supported by Ada County ("County"), filed an affirmative suit seeking declaratory judgment that he is not obligated to do so. The Coroner and County allege that the Coroner himself is not required by any law to release the records and, purport to assert rights of the decedent and unidentified other third parties, that release to DRI would violate the privacy rights of the third parties.

In order to provide context for this case, DRI provides the Court with an overview and history of the federal protection and advocacy laws that Congress enacted for the benefit of people with disabilities. DRI is the designated Protection and Advocacy agency ("P&A") for the State of Idaho pursuant to the Protection and Advocacy for Individuals with Mental Illness Act ("PAIMI Act"), 42 U.S.C. § 10801 *et seq.*, and the Developmental Disabilities Assistance and Bill of Rights Act, 42 U.S.C. § 15001 *et seq.*; *See also Disability Law Ctr. of Alaska, Inc. v. Anchorage Sch. Dist.*, 581 F.3d 936, 938 (10th Cir. 2009). "Upon finding that 'individuals with

mental illness are vulnerable to abuse and serious injury' Congress enacted the PAIMI Act in 1986 to 'ensure that the rights of individuals with mental illness are protected' and to 'assist States to establish and operate a protection and advocacy system for individuals with mental illness which will ... protect and advocate the rights of such individuals through activities to ensure the enforcement of the Constitution and Federal and State statutes....' *Indiana Prot. and Advocacy Services v. Indiana Family and Social Services Admin*, 603 F.3d 365, 367 (7th Cir. 2010) (citing to the PAIMI Act).  The PAIMI Act gives a designated protection and advocacy system like [DRI] the authority to investigate incidents of abuse and neglect of individuals with mental illness and to pursue administrative, legal, and other remedies on behalf of those individuals." *See id.* (citing 42 U.S.C. § 10805(a)(1)).

Congress also provides other protection and advocacy funds and authorities to DRI under the Developmental Disabilities Assistance and Bill of Rights Act of 2000, Pub. L. No. 106-402, 114 Stat. 1677, *codified as amended at* 42 U.S.C. § 15001 *et seq.* (PADD) (2006) (hereafter referred to as the "DD Act"), the Protection and Advocacy of Individual Rights Act (PAIR), Pub. L. No. 102-569, 106 Stat. 4430, *codified as amended at* 29 U.S.C. § 794e (2000), and other P&A programs.  The DD Act was originally enacted in 1975 in response to congressional hearings and investigations evidencing abuse and neglect in state facilities to protect the human and civil rights of individuals with developmental disabilities. *Alabama Disabilities Advocacy Program v. J.S. Tarwater Developmental Ctr.*, 97 F.3d 492, 494 (11th Cir. 1996).  Pursuant to the PAIMI Act, DD Act, and other P&A programs such as PAIR, P&As such as DRI ensure that vulnerable populations of people with disabilities are protected.  "Collectively, these [P&A] laws grant a state's [P&A] system the powers to investigate allegations of abuse and neglect, respond to rights violations, and provide general advocacy services on behalf of state residents with disabilities or

mental illness*." Alabama Disabilities Advocacy Program v. SafetyNet Youthcare, Inc.*,

__F.Supp. 3d __, 2014 WL 7012710, at *3 (S.D Al., 2014) (citing *Tarwater*),

Following the passage of the DD Act, Congress passed two other major pieces of

legislation vesting P & As with additional protection and advocacy authority for the benefit of

people with disabilities. In 1986, Congress enacted PAIMI, Pub. L. No 99-319, 100 Stat. 478,

*codified as amended at* 42 U.S.C. § 10801 *et. seq.* (2006), which expanded protection and

advocacy system responsibilities to include protecting and advocating for the rights of people

with mental illness and investigating reports of abuse and neglect in facilities that care for or

treat individuals with mental illness.  42 U.S.C. §10805(a)(1)(A) and (B). In 2000, Congress

enacted the Protection and Advocacy of Individual Rights Act (PAIR), Pub. L. No. 102-569, 106

Stat. 4430, *codified as amended at* 29 U.S.C. § 794e (2000), which "filled in the gaps and

inclusively covered all individuals with disabilities not yet covered by PADD or PAIMI.

Collectively, these three statutes grant a state's P & A the powers to investigate allegations of

abuse and neglect, respond to rights violations, and provide general advocacy services on behalf

of state residents with disabilities or mental illness." Kelsey McCowan Heilman, *The Rights of

Others: Protection and Advocacy Organizations' Associational Standing to Sue*, 157 U. Pa. L.

Rev. 237, 242 (2008). Together, PADD, PAIMI and PAIR grant P & A's broad federal authority

to pursue administrative and legal remedies on behalf of persons with disabilities, which include

private rights of action to enforce access to records. *See* 42 U.S.C. § 15043(a)(2)(A)(i) (PADD);

42 U.S.C. § 10805(a)(1)(B) (PAIMI); and 29 U.S.C. § 794e(f)(2)-(3) (PAIR).

The P&A's mandate under PAIMI extends to "individuals with mental illness" who are

an inpatient or resident in a facility rendering care and treatment. 42 U.S.C. §10802(4)(B)(i).

Such "facilities" include but are not limited to "hospitals" and "community facilities for

individuals with mental illness." 42 U.S.C. §10802(3). In order to fulfill their duties under PAIMI to investigate reports of abuse and neglect in facilities, DRI **shall** have access to such facilities and **shall "have access to all records** to any individual (including an individual who has died…) …with respect to whom a complaint has been received by the system or there is probable cause to believe that such individual has been subject to abuse or neglect." 42 U.S.C. §10805(a)(3) and 4)(B)(iii)(emphasis added).

Under PAIMI, a complaint includes, but is not limited to "any report or communication, whether formal or informal, written or oral received by the P&A, including media accounts, newspaper articles, telephone calls (including anonymous calls) from any source alleging abuse or neglect of an individual with mental illness." 42 C.F.R. §51.2. PAIMI's implementing regulations define probable cause as follows:

> Probable cause means reasonable grounds for belief that an individual with mental illness has been, or may be at risk of being subject to abuse or neglect. The individual making such determination may base the decision on reasonable inferences drawn from his or her experience or training regarding similar incidents, conditions or problems that are usually associated with abuse or neglect.

42 C.F.R. §51.2. Since the PAIMI Act indicates that the P&A is the final arbiter of probable cause between itself and the subject facility, the facility may not refuse access to records merely because it disagrees with the probable cause determination. *Arizona Ctr. for Disability Law v. Allen*, 197 F.R.D. 689, 692-93 (D. Ariz. 2000).

No fundamental liberty or privacy interest is impinged when a P&A finds probable cause to investigate an incident at a facility. *Alabama Disabilities Advocacy Program*, 97 F.3d at 499. When a P&A determines probable cause, no liberty interest of the individual with the disability is threatened, as it is precisely that individual's interest that the P&A seeks to protect. *Id.*

After a complaint has been received or probable cause to believe that an individual with

DEFENDANT/COUNTER-CLAIMANT'S MEMORANDUM IN SUPPORT OF
DISPOSITIVE MOTIONS – PAGE 5

mental illness has been subjected to abuse or neglect has been determined, the PAIMI statute and its implementing regulations require prompt access to records of such an individual. 42 U.S.C. §10805(a)(4)(B), 42 C.F.R. §51.14. PAIMI includes a non-exhaustive description of the types of records to which the P&A must be granted access in pertinent part as follows: "reports prepared by an agency charged with investigating incidents of abuse, neglect, and injury occurring at such a facility that describe incidents of abuse, neglect and injury occurring at such facility and the steps taken to investigate such incidents." 42 U.S.C. § 10806(b)(3)(A). Under PAIMI, "Congress expressed its intent to create a legally enforceable right of access to patient records in an identifiable class – protection and advocacy systems… which act for the benefit and protection of mentally ill individuals who may have difficulty acting for themselves." *Indiana Prot. and Advocacy Services*¸ 603 F.3d at 378 (holding that PAIMI creates an express private right of action for a P & A to enforce its access to patient records).

PAIMI further requires a P&A to maintain the confidentiality of records about an individual with mental illness pursuant to its federal investigative authority "to the same extent as is required" of a "provider of mental health services." 42 U.S.C. § 10806(a); 42 C.F.R. § 51.45. This strict statutory and regulatory confidentiality requirement defeats any alleged privacy concerns that may be raised by investigative agencies or facilities. *See Disability Rights Wisconsin, Inc. v. State of Wisconsin Dep't of Public Instruction*, 463 F.3d 719, 729-30 (7th Cir. 2006) ("The point of the federal P & A statutes is to establish and equip a specialized agency to look out for individuals with mental illness. Confounding the agency in the name of an illusory concern for privacy defeats that very important goal.").

DRI files this dispositive motion for three purposes. First, as a Defendant, DRI seeks to dismiss the Coroner's and County's Complaint pursuant to Fed. R. Civ. P. 12(h)(3) for lack of

standing. Second, DRI moves for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c) for failure to allege a "substantial controversy" between the parties which would entitle them to relief and, third, to dismiss Ada County as a Plaintiff because it is not a real party in interest. If the Court denies DRI's Motion to Dismiss or Motion for Judgment on the Pleadings, Defendant also moves for Summary Judgment both as a Defendant to the claims asserted in the Coroner's and County's Complaint as well as a Counter-Claimant as to its claims asserted in its Counterclaim.

DRI is entitled to the dispositive relief it seeks because the County is not a real party in interest and lacks standing to sue, because the Coroner and the County lack standing to assert the privacy rights of third parties, because there is no substantial controversy between the parties, and because, as a matter of law, DRI is entitled to the records it has requested and which the Coroner has refused to provide.

### A.  Undisputed Material Facts

Pursuant to District of Idaho Local Rule 7.1, DRI has filed separately with the Court a Statement of Undisputed Material Facts, which is, by this reference; fully incorporated herein. DRI is Idaho's federally mandated P&A for persons with disabilities.  D.T. is an individual with mental illness.  D.T. committed suicide in March of 2014 while involuntarily committed in a behavioral health unit of a local hospital.  The Ada County Coroner investigated and created various records regarding the suicide death of D.T. DRI commenced an abuse and neglect investigation of the circumstances of this suicide.  To complete its investigation, DRI requested records pursuant to its records access authority under PAIMI from the hospital, police, and coroner.  The hospital and police provided the requested records.  The coroner did not.

### B.  Procedural History

On August 29, 2014, the County and Edwin Sonnerberg, the Ada County Coroner ("the

Coroner')   filed a Complaint for Declaratory Relief against DRI in the Fourth Judicial District

Court for the County of Ada, State of Idaho. The Complaint requested the State Court to declare

that the Coroner is "not required by state or federal law to provide DRI records relating to D.T.'s

suicide." (Dkt. 1-3, pg. 5-6). DRI moved to have this case removed to Federal District Court.

(Dkt. 1). After removal to this Court, The County and the Coroner filed an Answer and

Counterclaim. (Dkt. 5). Plaintiffs then filed an Answer to Defendants' Counterclaim and moved

to remand the case back to state court. (Dkt. 8, 9). On April 29, 2015, the Court entered a

Memorandum Decision and Order denying the Coroner's and County's Motion to Remand. (Dkt.

24).

## II.        ARGUMENT

### A.  The Coroner and County' Complaint should be dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(h)(3).

#### 1.  Legal Standard

 Fed. R. Civ. P. 12(h)(3), requires a Court to dismiss an action if it "determines at any

time that it lacks subject matter jurisdiction." "The distinction between a Rule 12(h) (3) motion

and a Rule 12(b)(1) motion is simply that the former may be asserted at any time and need not be

responsive to any pleading of the other party." *Berkshire Fashions, Inc. v. M.V. Hakusan II,* 954

F.2d 874, 880, n. 3 (3d Cir. 1992); *see also Kairy v. SuperShuttle Int'l, Inc.,* 721 F.Supp.2d 884,

885 (N.D.Cal .2009) (applying a single standard to a motion to dismiss pursuant to Rules

12(b)(1) and 12(h)(3)). "Motions brought pursuant to Rule 12(h)(3) are subject to the same

standards as a motion to dismiss for want of subject matter jurisdiction brought pursuant to Rule

12(b)(1)." *Perrodin v. U.S.*, 350 F.Supp.2d 706, 708, n.1 (D.S.C. 2004). When a plaintiff lacks

standing under the Article III "case or controversy" requirement, federal courts lack subject

matter jurisdiction over the suit. *Cetacean Community v. Bush,* 386 F.3d 1169, 1174 (9th Cir. 2004).

Once a party has moved to dismiss for lack of subject matter jurisdiction, the opposing party bears the burden of establishing the court's jurisdiction. *See Chandler v. State Farm Mut. Auto. Ins.Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010); *St. Clair v. City of Chico,* 880 F.2d 199, 201 (9th Cir. 1989). For purposes of ruling on a motion to dismiss for want of standing, the court accepts as true all material allegations of the complaint. *AlohaCare v. Hawaii, Dept. of Human Serv.*, 567 F. Supp.2d 1238, 1245 (D. Haw. 2008)(quoting *Warth v. Seldin,* 422 U.S. 490, 501, 95 (1975)); *see also Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, (1992).

In order to have standing to sue in federal court, a plaintiff must allege "'such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify the exercise of the court's remedial powers on his behalf." *Warth*, 422 U.S. at 498-99 (1975) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)). The party in question must prove: (1) an injury-in-fact that is concrete and particularized, and actual or imminent; (2) a fairly traceable causal connection between the injury alleged and the conduct in dispute; and (3) a sufficient likelihood that the relief sought will redress the injury. *Lujan,* 504 U.S. at 560–61. For purposes of this analysis, a "particularized injury" is one that "affect[s] the plaintiff in a personal and individual way." *Id*. at 560 n.1. One of the prudential limitations on standing is that "a litigant must normally assert his own legal interests rather than those of third parties." *Fleck & Assoc., Inc. v. Phoenix, City of, an Arizona Mun. Corp.,* 471 F.3d 1100, 1104 (9th Cir. 2006)(quoting *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 804, (1985) (citations omitted)).

> **2.   The County's and the Coroner's Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(h)(3) as neither the County nor the Coroner have suffered an "injury in fact" sufficient to establish standing.**

The County and the Coroner have requested the court to enter a declaratory judgment stating as follows:

> That the Ada County Coroner is not required by state or federal law to provide DRI records relating to D.T.'s suicide including, but not limited to, autopsy reports, coroners' reports, inquest transcripts, investigative reports, medical and toxicology reports, or other records or documents that were reviewed or relied upon in reaching the conclusions and findings concerning D.T.'s death. Furthermore, **that providing these Ada County Coroner records to DRI would violate the privacy rights of D.T., D.T.'s family, or individuals who interacted with D.T.**

(Dkt. 1-3, pg. 5-6)(emphasis added).  Accordingly, they are seeking two declarations. First, that they have no legal obligation to provide requested records to DRI and, second, that to do so would violate the privacy of the decedent DT and unidentified others. Because they have not, and cannot, alleged particularized injury in fact, they lack legal standing to entitle them to either declaration.

The County and Coroner have failed to allege any facts or legal claims in their Complaint and supporting exhibits that they will suffer any actual, imminent, or personal "injury-in-fact" should they provide the requested records to DRI. As a result, they have not established this necessary element of federal court jurisdiction and should have their complaint dismissed.

The Coroner's and County's Complaint and supporting exhibits make reference to a "**concern** that releasing these **records may violate D.T.'s privacy rights** under the Fourteenth Amendment to the United States Constitution and Idaho law" and that "releasing these records **could** subject Ada County to liability." (Dkt. 1-3, ¶8) (emphasis added). As previously stated, a personal or "particularized injury" is one that "affect[s] the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1. A potential, albeit speculative, violation of D.T.'s privacy rights does not amount to an injury that affects the Coroner or the County in a personal or individual way. *See Thomas*, 572 F.3d at 761 (finding that county attorney did not have standing

to challenge constitutionality of separate DUI courts because he did not have a personal interest in the case).

Furthermore, the Coroner and the County have alleged that "disclosure of these records **may** violate the privacy rights of D.T., D.T.'s family, and unknown and unnamed individuals who interacted with D.T. and that disclosing the records **may subject** Ada County to liability…" (Dkt. 1-3, ¶14) (emphasis added). Hypothetical or conjectural liability that "could" or "may" result from disclosing these records to DRI does not amount to a concrete and particularized injury to either the Coroner or the County for purposes of establishing standing. *See City of S. Lake Tahoe v. California Tahoe Reg'l Planning Agency*, 625 F.2d 231, 238 (9th Cir. 1980)(finding council members' alleged exposure to civil liability did not provide a sufficiently concrete injury).

Finally, even if the Coroner or the County alleged hypothetical future liability could be considered a concrete and particularized injury, it is not actual or imminent. As the Ninth Circuit has held, "[w]hile a threat of injury may comply with the injury in fact requirement, the threat must be 'both real and immediate, not conjectural or hypothetical.'" *Scott v. Pasadena Unified School Dist.,* 306 F.3d 646, 656 (9th Cir. 2002) (quoting *City of Los Angeles v. Lyons,* 461 U.S. 95, 102 (1983)). Here, neither the Coroner nor the County have identified or specifically named any individual whose privacy rights may be in danger from the records disclosure.  They have made no allegation that they are facing any real or immediate threat of liability should these records be disclosed to DRI, nor have they claimed that a lawsuit is inevitable. In fact, D.T.'s sister, Leann Jopson, has even stated that she has no objection to DRI receiving or reviewing the autopsy or other records created by the Coroner in regards to D.T.'s death investigation. (Affidavit of Leanne Jopson in Support of Defendant/Counter-Claimant's Memorandum in

Support of Dispositive Motions, ("Jopson Affidavit"), ¶6). Instead, the Coroner and County's claims of potential liability amount to nothing more than hypothetical or conjectural threats, which is not enough to satisfy the "injury-in-fact" requirement of standing. Consequently, their Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(h)(3).

> **B. DRI is entitled to judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) and 17(a) because the Coroner and the County have failed to allege the existence of a "substantial controversy" between the parties which would entitle them to declaratory relief and because the County does not qualify as a "real party in interest," requiring its dismissal from the case.**

### 1. Legal Standard

Motions for a judgment on the pleadings are governed by Fed. R. Civ. P. 12(c), which provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is evaluated under the same standard applicable to motions to dismiss brought under Rule 12(b)(6). *See Enron Oil Trading & Trans. Co. v. Walbrook Ins. Co., Ltd.*, 132 F.3d 526, 529 (9th Cir. 1997). Therefore, the standard for a motion for judgment on the pleadings is that articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

A motion to dismiss under Fed. R. Civ. P. 12(c) questions the sufficiency of a plaintiff's claim for relief. *Quest Commc'n. Corp. v. City of Berkley*, 208 F.R.D. 288, 291 (N.D. Cal. 2002). The relevant inquiry is whether the plaintiff's allegations are sufficient under Fed. R. Civ. P. 8(a), which requires that the plaintiff provide a "short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the…claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.

A motion to dismiss will only be granted if the complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. A complaint is plausible when the factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A judgment on the pleadings may be granted only when it appears beyond doubt that the claiming party can prove no set of facts in support of his claim which would entitle him to relief. *Enron Oil*, 132 F.3d at 529 (internal quotations and citations omitted).

When considering a motion for judgment on the pleadings, the court assumes the factual allegations made in the complaint are true and draws all reasonable inferences in favor of the non-moving party. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). A judgment on the pleadings is appropriate when after taking all the allegations in the complaint as true, the moving party is entitled to judgment as a matter of law. *Milne ex rel. Coyne v. Stephen Slesinger, Inc.*, 430 F.3d 1036, 1042 (9th Cir. 2005).

>     **2.  The Coroner's and County's Complaint fails to allege the existence of a "substantial controversy" of sufficient immediacy and reality between the parties which would entitle them to declaratory relief.**

Declaratory judgment actions are justiciable if "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *National Basketball Ass'n v. SDC Basketball Club, Inc.,* 815 F.2d 562 (9th Cir. 1987)(quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). In certain situations, "[t]he threat of litigation can establish justiciable controversy if it is specific and concrete." *Shields v. Norton*, 289 F.3d 835 (5th Cir. 2002); *see also National Basketball Ass'n*, 815 F.2d at 565.

In their complaint, the Coroner and County have requested this Court enter a

declaratory judgment in their favor, holding as follows:

> That the Ada County Coroner is not required by state or federal law[1] to provide
> DRI records relating to D.T.'s suicide including, but not limited to, autopsy
> reports, coroners' reports, inquest transcripts, investigative reports, medical and
> toxicology reports, or other records or documents that were reviewed or relied
> upon in reaching the conclusions and findings concerning D.T.'s death.
> Furthermore, **that providing these Ada County Coroner records to DRI would
> violate the privacy rights of D.T., D.T.'s family, or individuals who interacted
> with D.T.**

Dkt. 1-3, pg. 5-6. (emphasis added).  As noted, the County and the Coroner are seeking

declarations that the sharing of the Coroner's file on D.T.'s death is not required by state or

federal law and, moreover, would violate state and federal privacy rights of third parties such as

D.T., D.T.'s family, and any individual who interacted with D.T. They have failed to establish a

substantial controversy between the parties on either matter.

The Coroner not only fails to establish sufficient standing for judicial relief, both parties

fail to acknowledge that the PAIMI Act requires DRI to maintain records obtained under the Act

confidential. 42 U.S.C. § 10806(a); 42 C.F.R. § 51.45. Under PAIMI, a P & A is required to keep

confidential all records and information pertaining to clients to the same extent as is required

under Federal or State laws for a provider of mental health services. 42 U.S.C. § 10806(a); 42

C.F.R. § 51.45. This strict statutory and regulatory confidentiality requirement defeats any

alleged privacy concerns that may be raised by investigative agencies or facilities. *See Disability

Rights Wisconsin, Inc.* 463 F.3d at 729-30 ("The point of the federal P & A statutes is to

establish and equip a specialized agency to look out for individuals with mental illness.

Confounding the agency in the name of an illusory concern for privacy defeats that very

important goal."); *Pennsylvania Prot. and Advocacy, Inc. v. Houstoun*, 228 F.3d 423, 428 (3rd

---

[1] Plaintiffs do not identify which "state" or "federal" law they are referring to.

Cir 2000) ("Since PAIMI requires [P&A] organizations themselves to maintain the confidentiality of peer review reports, disclosure of peer review reports to [P&A] organizations is not precluded by the  [state] statute.); *see also Wisconsin Coalition for Advocacy, Inc. v. Czapelewski*, 131 F.Supp.2d 1039, 1052 (E.D. Wisc. 2001) (holding that a P & A's access to records would not "unduly intrude upon the privacy of nursing home residents. This is because federal law requires that . . . the Protection and Advocacy System, keep such records confidential.")

By requesting that the Court issue a declaratory judgment stating that providing such records to DRI would violate third party privacy rights under state and federal law, the Coroner and the County have alleged a "controversy" that contradicts the federal mandate under the PAIMI Act that DRI must keep any documents it receives confidential.  Thus, there is no potential violation of anyone's privacy rights.

Further, while "the threat of litigation" can establish a justiciable controversy, such a threat must be specific and concrete. *Shields*, 289 F.3d at 835. Neither of these speculative situations have been plead or alleged within the Coroner's and County's complaint. In fact, neither the Coroner nor the County has alleged that they have been contacted by any of these unidentified individuals and have been threatened with such a lawsuit. Moreover, D.T.'s own sister has stated she has no objection to DRI receiving the requested documents. (Jopson Affidavit, ¶6).  As a result, neither the Coroner nor the County has asserted any factual basis to support such a hypothetical set of facts.  Even if there were threats of a lawsuit, no privacy breach would have occurred as the PAIMI Act authorizes DRI to receive the Coroner's records and also mandates that DRI maintain the confidentiality of those records.  Therefore, this Court should grant DRI's motion for judgment on the pleadings and conclude as the Eleventh Circuit

did in *Hendrix v. Poonai*, 662 F.2d 719 (11th Cir. 1981), that the County and the Coroner have failed to allege the required "controversy" and that the Court does not have jurisdiction over such an "abstract question 'based upon the possibility of a factual situation that may never develop." *Id*. at 722 (quoting *Brown & Root, Inc., v. Big Rock Corp.*, 383 F.2d 662, 665 (5th Cir. 1967)).

### 3. The County should be dismissed from the case pursuant to Fed. R. Civ. P. 12(c) and 17(a) because it is not a real party in interest.

Federal Rule of Civil Procedure 17(a) states that "[e]very action shall be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a). "Rule 17(a) is designed to ensure that lawsuits are brought in the name of the party possessing the substantive right at issue." *Klamath–Lake Pharm. Ass'n v. Klamath Medical Serv. Bureau,* 701 F.2d 1276, 1282 (9th Cir. 1983), *cert. denied,* 464 U.S. 822, (1983).The rule's function is "simply to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata." Fed. R. Civ. P. 17 Adv. Comm. Note.

A real-party-in-interest defense can be raised as a Rule 12(b)(6) motion, essentially stating that because the plaintiff is not the person who should be bringing the suit, the plaintiff has "fail[ed] to state a claim upon which relief can be granted." *Whelan v. Abell*, 953 F.2d 663, 672 (D.C. Cir. 1992)(quoting Fed. R. Civ. P. 12(b)(6)).[2]  In this case, the County has asserted itself along with the Coroner as a Plaintiff in this matter. However, at no relevant time herein has the County had any involvement, interest, or stake in the events alleged in this matter or in the alleged controversy described in the complaint. Instead, as the facts alleged in both the Complaint and Answer assert, the only Plaintiff with any involvement in the matters alleged is

---

[2] Because a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is "functionally identical" to a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c), DRI argues that the holding in *Whelan* should be applicable to a Fed. R. Civ. P. 12(c) motion.  *Dworkin v. Hustler Magazine, Inc.,* 867 F.2d 1188, 1192 (9th Cir. 1989).

the Coroner. Further, should the Court issue an Order requiring the release or production of these records, it would not be an order for the County to release or produce these records as it is the Coroner, not the County that actually is the holder of such records. Dismissal of the County will not adversely impact the Coroner who is already a party. *See* Rule 17(a).

### C. DRI is entitled to summary judgment as a matter of law pursuant to Fed. R. Civ. P. 56.

#### 1. Legal Standard

Summary judgment is appropriate where a party can show that, as to any claim or defense, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims ...." *Battelle Energy Alliance, LLC., v. Southfork Sec., Inc.,* 3 F.Supp.3d 852, 857 (D. Idaho 2014) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, (1986)). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* (citations omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Battelle Energy Alliance, LLC.,* 3 F.Supp.3d at 857 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, (1986)). There must be a genuine dispute as to "any *material* fact—a fact 'that may affect the outcome of the case.'" *Id.* at 857-58.

Although the evidence must be viewed in the light most favorable to the non-moving party, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988). As the moving party, DRI bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *Devereaux v.*

*Abbey,* 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). However, to carry this burden, since the County and the Coroner bear the burden of persuasion at trial, DRI need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir. 2000).

This then shifts the burden to the County and the Coroner to produce evidence sufficient to support a jury verdict in her favor. *Devereaux,* 263 F.3d at 1076. The non-moving party must go beyond the pleadings and show "by her [ ] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex,* 477 U.S. at 324. However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1029 (9th Cir.2001) (quotation omitted). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *S. Cal. Gas Co. v. City of Santa Ana,* 336 F.3d 885, 889 (9th Cir. 2003).

> **2.    DRI is entitled to summary judgment because the County and the Coroner cannot demonstrate that providing the Coroner's records to DRI would violate the privacy rights of D.T., unnamed members of D.T.'s family, or unnamed individuals who interacted with D.T.**

The Complaint requests the court enter a declaratory judgment stating that providing the Coroner's records to DRI would violate the privacy rights of D.T. (Dkt. 1-3, pg. 5-6). However, as argued earlier, the Coroner and the County fail to acknowledge that same federal law which permits DRI to access such records also requires DRI to  maintain those records in the same confidential manner as the provider of the records, i.e., in this case the Coroner.  See 42 U.S.C. § 10806(a); 42 C.F.R. § 51.45. As argued above, this heightened strict statutory and regulatory confidentiality requirement defeats any alleged privacy concerns that may be raised

by the provider of the records. DRI assuming the Coroner's office is bound to the same or similar confidentiality requirements; this case essentially involves the confidential exchange of information between two agencies. As such, DRI's possession of the information "seems no more troubling as a privacy matter" than the Coroner's possession. *Disability Rights Wisconsin, Inc.,* 463 F.3d at 729-30.

Therefore, neither the Coroner nor the County has not asserted any material factual basis to support their hypothetical set of facts or breach of confidentiality. Since no material issues of fact exist, Defendants DRI are entitled to summary judgment and this Court should order that DRI is entitled to received the requested records and order the Coroner to provide the records to DRI.

> **3. DRI is entitled to summary judgment because as the State of Idaho's designated P&A, it is mandated by the PAIMI Act to investigate reports of alleged abuse or neglect in facilities and has the authority to access records such as the Coroner's investigatory records to accomplish its mandate.**
>
> **a. DRI received a complaint, made a probable cause determination, initiated an abuse and neglect investigation and requested access to records pursuant to its authority as the P&A under the PAIMI Act.**

PAIMI requires that DRI, investigate reports of abuse and neglect in facilities that care for or treat individuals with mental illness. 42 U.S.C. §10805(a)(1)(A) and (B). In order to fulfill their duties under PAIMI to investigate reports of abuse and neglect, P&As "**shall have access to all records** to any individual (including an individual who has died…)…with respect to whom a complaint has been received by the system or there is probable cause to believe that such individual has been subject to abuse or neglect. 42 U.S.C. §10805(a)(3) and 4)(B)(iii)(emphasis added). As previously cited above in subsection 4 (b), under PAIMI a complaint can include "a report or communication….from any source alleging abuse or neglect of an individual with mental illness." 42 C.F.R. §51.2. Probable cause means "reasonable grounds for belief that an

individual with mental illness has been, or may be at risk of being subject to abuse or neglect." *Id*.; *see also*, *Pennsylvania Prot. & Advocacy, Inc.*, 228 F.3d at 426 ("all records" under the PAIMI Act which the P&A is to have access include peer review records which evaluate the circumstances of a individuals death at a state hospital.).

In this case, DRI received a report that a patient with mental illness had died in a hospital and that the cause of the patient's death was suicide. (Dkt. 5, ¶34; Affidavit of Dina Flores-Brewer in Support of Defendant/Counter-Claimant's Dispositive Motions, ("Flores-Brewer Affidavit"), ¶4). Upon request, on May 27, 2014, the hospital disclosed to DRI the identity of D.T. as the patient who had died in its facility due to suicide. (Dkt. 5, ¶35; Flores-Brewer Affidavit, ¶7; Affidavit of Cecilia Vega in Support of Defendant/Counter-Claimant's Dispositive Motions, ("Vega Affidavit"), ¶4). DRI then determined that D.T. was an individual with a mental illness and that there was probable cause to believe that D.T.'s death may have resulted from abuse or neglect and as a result, commenced an abuse and neglect investigation into the circumstances of D.T.'s death. (Dkt. 5, ¶3,6; Flores-Brewer Affidavit ¶8; Vega Affidavit ¶6). Pursuant to its authority under PAIMI, DRI requested access to confidential patient records from the hospital related to the psychiatric care and treatment of D.T. at the hospital and the circumstances of D.T.'s death. (Flores-Brewer Affidavit, ¶6; Vega Affidavit, ¶3).  DRI was provided access to these records. (Flores-Brewer Affidavit ¶7; Vega Affidavit, ¶4). Pursuant to the same PAIMI authority, DRI requested access to the investigatory records, including a copy of the autopsy report concerning D.T., from the Coroner on May 29, 2014, which the Coroner has refused and/or failed to provide or allow access to. (Dkt. 5, ¶37, 38, 43, 44; Flores-Brewer Affidavit ¶¶11,12,14; Vega Affidavit ¶¶6,9,11).

**b. DRI has the authority under the PAIMI Act to access the Coroner's investigatory records pertaining to the death of D.T.**

DEFENDANT/COUNTER-CLAIMANT'S MEMORANDUM IN SUPPORT OF
DISPOSITIVE MOTIONS – PAGE 20

In both its Complaint and in its Answer to DRI's Counterclaim, the Coroner and the County deny on multiple occasions that DRI has a right to or is entitled to access the requested records at issue in this case.[3] (Dkt. 1-3, ¶17; Dkt. 8, pg. 2, 5,6, and 7). However, as previously stated, the federal PAIMI statute requires that in order to fulfill its duties under PAIMI to investigate reports of abuse and neglect in facilities, DRI **shall "have access to all records** to any individual (including an individual who has died…) …with respect to whom a complaint has been received by the system or there is probable cause to believe that such individual has been subject to abuse or neglect." 42 U.S.C. §10805(a)(3) and 4)(B)(iii)(emphasis added). Such records include "reports prepared by an agency charged with investigating incidents of abuse, neglect, and injury occurring at such a facility that describe incidents of abuse, neglect and injury occurring at such facility and the steps taken to investigate such incidents." 42 U.S.C. 10806(b)(3)(A). Such "facilities" include but are not limited to "hospitals" and "community facilities for individuals with mental illness." 42 U.S.C. §10802(3).

In a similar case, the Western District Court for the District of Wisconsin found that the records compiled by a county coroner in the course of his investigation of the death of an inmate with mental illness were covered by PAIMI. *Wisconsin Coalition for Advocacy, Inc. v. Busby*, Case No. 02-C-871 (E.D. Wis. September 24, 2003) (order granting partial summary judgment

---

[3] In its Answer to DRI's Counterclaim, the Coroner appears to assert approximately over 40 affirmative defenses. DRI objects to and specifically asserts that the affirmative defenses 14-23, 31-36, and 39-44 are not relevant and/or beyond the scope of this case. Furthermore, DRI also objects to and specifically asserts that any affirmative defense asserted by the Coroner alleging violations of state law are not relevant and essentially non-applicable due to the fact that this case deals exclusively with federal law. DRI also objects to and specifically asserts that affirmative defenses 25-27 are also no longer relevant pursuant to the Court's April 29, 2015 Memorandum Decision and Order denying Plaintiffs/Counter-Defendant's Motion to Remand. (DKt. 24). DRI reserves the right to provide further responses and objections to any other affirmative defense asserted by the Coroner in its responsive memorandum.

and permanent injunction).[4]  In the case, the Wisconsin P&A sued the Winnebago County

Coroner, Barry Busby, in his official capacity, for failing to promptly allow the P&A access to

records of his investigation into the death of a mentally ill inmate at a Wisconsin prison. *Id*. In

his decision, the Honorable William C. Griesbach determined that the records Coroner Busby

had compiled in the course of his investigation of the cause of the inmate's death fell within the

PAIMI definition of "records" to which the P&A was entitled to access. *Id*. Not only did the

court conclude that the inmate was a "mentally ill" individual residing in a "facility" within the

meaning of the PAIMI act at the time of his death, but also that "a coroner's office is an agency

charged with investigating deaths (certainly a form of injury), including deaths of individuals

with mental illness that are the result of abuse and neglect." *Id*. Furthermore, the Court stated

that the "duty to investigate reports of incidents of abuse, neglect and injury occurring at

facilities covered by PAIMI is implicit in the broader duty of a coroner to investigate suspicious

deaths within his or her jurisdiction." *Id*.

Likewise, the records that Erwin Sonnenberg, in his official capacity as the Ada County

Coroner, compiled in the course of his investigation of the cause of D.T.'s death should certainly

fall within the "records" definition enumerated within PAIMI. It is undisputed that D.T. was a

patient involuntarily committed at an inpatient psychiatric hospital located in the City of Boise,

Ada County, in or about March 2014. (Dkt. 5, ¶32; Dkt. 8, pg. 3). As such, D.T. meets the

definition of an "individual with mental illness" who is an inpatient or resident in a "facility"

rendering care and treatment pursuant to PAIMI. *See* 42 U.S.C. §10802(4)(B)(i), §10802(3).

Furthermore, it is undisputed that in or about March 2014, D.T. committed suicide while

receiving psychiatric care and treatment at the hospital. (Dkt. 5, ¶33; Dkt.8, pg. 4). It is also

---

[4]A copy of this case is attached to Plaintiff's Complaint as an exhibit. (Dkt. 1-3, Exhibit I).

undisputed that Erwin Sonnenberg, was the duly elected coroner for Ada County at the time of D.T.'s death and that in his official capacity as the Ada County Coroner, he conducted an investigation into the death of D.T. and created certain records as a part of that investigation. (Dkt. 5, ¶31; Dkt. 8, pg. 3). According to Idaho Code, a county coroner is charged with the investigation of deaths, including those resulting from suicide or accident. Idaho Code §19-4301(1)(a). Certainly, a death or suicide of a mentally ill individual occurring within an inpatient psychiatric hospital where the person is supposed to be receiving care and treatment for their suicidal behavior can be considered an incident of "abuse, neglect, or injury" occurring at a facility pursuant to PAIMI.[5]

Therefore, as part of DRI's abuse and neglect investigation of the suicide death of D.T., any records created by Erwin Sonnenberg, the Coroner, as a result of his investigation into the death of D.T. would qualify as "records" to which DRI is entitled to have access to pursuant to PAIMI. Specifically, the requested records constitute "reports prepared by an agency charged

---

[5] "The term "abuse" means any act or failure to act by an employee of a facility rendering care or treatment which was performed, or which was failed to be performed, knowingly, recklessly, or intentionally, and which caused, or may have caused, injury or death to a individual with mental illness, and includes acts such as [:] (A) the rape or sexual assault of a individual with mental illness; (B) the striking of a individual with mental illness; (C) the use of excessive force when placing a individual with mental illness in bodily restraints; and (D) the use of bodily or chemical restraints on a individual with mental illness which is not in compliance with Federal and State laws and regulations. 42 U.S.C.A. § 10802 (1)(A-D).

"The term 'neglect' means a negligent act or omission by an individual responsible for providing services in a facility rendering care or treatment which caused or may have caused injury or death to a individual with mental illness or which placed a individual with mental illness at risk of injury or death, and includes an act or omission such as the failure to establish or carry out an appropriate individual program plan or treatment plan for an individual with mental illness, the failure to provide adequate nutrition, clothing, or health care to a individual with mental illness, or the failure to provide a safe environment for a individual with mental illness, including the failure to maintain adequate numbers of appropriately trained staff." 42 U.S.C. §10802(5).

with investigating reports of incidents of abuse, neglect or injury occurring at such facility." 42

U.S.C. §10806(b)(3)(A).Thus, as no material dispute of fact exists, DRI is entitled to summary

judgment as well as a declaration that DRI is entitled to the requested records of the Coroner.

### c. The Coroner refused to provide DRI with prompt and reasonable access to the requested records in violation of PAIMI.

In its Answer to DRI's Counterclaim, the Coroner denied that it had violated the PAIMI

Act and has also denied that it has refused to provide access to the records requested by DRI.

(Dkt. 8, pg. 5,7). However, the undisputed facts show that on May 29, 2014, DRI first requested

a copy of the Coroner's "autopsy reports, coroners' reports, inquest transcripts, investigative

reports, medical and toxicology reports, and other records or documents that were reviewed or

relied upon in reaching the conclusions and findings concerning [D.T's] death" on May 29,

2014. (Dkt. 1-3, ¶7; Dkt. 5, ¶¶6, 37; Dkt. 8, pg. 4). In response, the Coroner repeatedly refused

this request, first on June 25, 2014 and again on August 5, 2014.  (Dkt. 1-3, ¶8; Dkt. 5, ¶¶7, 38,

42; Dkt. 8, pg. 4, 5).  To date, over a year after it initial request, DRI has not been given access to

the records.

The PAIMI Act's regulations state that "access to records **shall be extended promptly** to

all authorized agents of a P&A, such as DRI." 42 C.F.R. §51.14(a) (emphasis added).

Repeatedly denying access to such records and then continuing to withhold them, for over a year

after they were first requested, cannot be construed as "prompt" access. In *Busby*, the court

concluded that the coroner had failed to comply with PAIMI by refusing to provide the

P&Aaccess to the records for some three months after its initial request. *Busby*, Case No. 02-C-

871 (E.D. Wis. September 24, 2003) (order granting partial summary judgment and permanent

injunction).

DEFENDANT/COUNTER-CLAIMANT'S MEMORANDUM IN SUPPORT OF
DISPOSITIVE MOTIONS – PAGE 24

Other federal courts have consistently held that agencies charged with investigating facilities where people with disabilities receive care and treatment must permit P & A access to records and reports for investigative purposes to determine if abuse or neglect has occurred. *See, e.g.*, *Disability Rights Wisconsin, Inc.*, 463 F.3d 719 (7th Cir. 2006) (state education agency required to turn over records of its investigation into use of seclusion rooms for disciplining disabled students to under PADD, PAIMI, and PAIR); *Ctr. for Legal Advocacy v. Hammons*, 323 F.3d 1262 (10th Cir. 2003) (PAIMI preempted state statutes barring disclosure of peer review and quality assurance records); *Iowa Prot. and Advocacy Services, Inc. v. Rasmussen*, 521 F.Supp.2d 895 (S.D. Iowa 2002) (PADD and PAIMI required disclosure or report of investigation of health care facility resident's death by state agency); and *Ala. Disabilities Advocacy Prog.*, 97 F.3d at 497 (11th Cir.1996) (concluding that "it is clear that the [federal P&A statutes] provide[ ] express authority for P&A's to gain broad access to records, facilities and residents to ensure that the [statutes'] mandates can be effectively pursued"). With the exception of the *Disability Rights Wisconsin, Inc.* case, each of these cases involved a P&A being denied access to records pertaining to a facility resident's death, suicide, or attempted suicide and in each case, the Court determined that the P&A was entitled to disclosure of such records under PAIMI.  Consequently, DRI is entitled to summary judgment as there are no material facts in dispute -  the Coroner has refused to provide DRI access to the requested records is in violation of PAIMI, entitling DRI to declaratory and injunctive relief.

  **4.  As plead in DRI's counterclaim, the Coroner's refusal to provide DRI with prompt and reasonable access to the requested records is in violation of 42 U.S.C. §1983, entitling DRI to summary judgment as a matter of law.**

Furthermore, while acting under color of state law, the Coroner has refused and/or failed to provide DRI prompt or any access to the requested records, and deprived DRI of its rights

guaranteed under federal law, the PAIMI Act, in violation of 42 U.S.C. §1983. This statute

provides a cause of action for violations of a plaintiff's constitutional or other federal rights by

persons acting under color of state law. *Nurre v. Whitehead*, 580 F.3d 1087, 1092 (9th Cir. 2009).

"The purpose of §1983 is to deter state actors from using the badge of their authority to deprive

individuals of their federally guaranteed rights." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th

Cir. 2006)(citation omitted). To state a claim under §1983, a plaintiff must  show that an "(1) act

by the defendants (2) under color of state law (3) depriv[ed][him] of federal rights, privileges or

immunities [and] (4) caus[ed] [him] damage." *Thornton v. City of St. Helens*, 425 F.3d 1158,

1164 (9th Cir. 2005) (quoting *Shoshone–Bannock Tribes v. Idaho Fish & Game Comm'n,* 42

F.3d 1278, 1284 (9th Cir.1994)).

    DRI contends in its counterclaim that in refusing to provide access to records regarding

the suicide death of D.T., the Coroner's actions, inactions, practices, policies and procedures

have violated DRI's statutory rights under PAIMI, 42 U.S.C. §10801 et seq., thereby depriving

DRI of rights, privileges or immunities secured under federal law. "In order to sue a municipal

entity – including employees acting within their official capacities – a plaintiff must meet the

*Monell* standard, i.e. the plaintiff must show that the alleged injury was inflicted through

executing or implementation of the entity's 'official policy.'" *Curtis v. City of Gooding*, 844

F.Supp.2d 1101, 1109 (D.Idaho 2012)(quoting *Monell v. Dep't of Soc. Servs. of City of New

York,* 436 U.S. 658, 694 (1978)). Consequently, in order to prevail on a §1983 claim against a

municipal government, a plaintiff must prove the following elements by a preponderance of the

evidence: (1) action by an employee or official under color of law; (2) deprivation of a right

guaranteed by the U.S. Constitution or a federal statute; and (3) action pursuant to an "official

municipal policy." *Monell*, 436 U.S. at 690-92.

To establish liability under §1983, "[t]here must be a direct casual link between a municipal policy or custom and the alleged constitutional deprivation." *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 957 (9ᵗʰ Cir. 2008)(citing *City of Canton v. Harris,* 489 U.S. 378, 385 (1989)). Municipalities may only be liable if their policies are the "'moving force [behind] the constitutional violation.' " *City of Canton*, 489 U.S. at 389 (quoting *Monell*, 436 U.S. at 694)).

In this case, it is undisputed that DRI first requested a copy of the Coroner's "autopsy reports, coroners' reports, inquest transcripts, investigative reports, medical and toxicology reports, and other records or documents that were reviewed or relied upon in reaching the conclusions and findings concerning [D.T's] death" through a letter submitted on May 29, 2014. (Dkt. 1-3, ¶7; Dkt. 5, ¶¶6, 37; Dkt. 8, pg. 4). In that letter, DRI explained it's authority to request these records under PAIMI, including with the letter a print out of the PAIMI statute along with relevant case citations in support of this authority. (Dkt.1-3, Ex. A). In response, the Coroner repeatedly denied access to the records, first on June 25, 2014 and again on August 5, 2014. (Dkt. 1-3, ¶8; Dkt. 5, ¶¶7, 38, 42; Dkt. 8, pg. 4, 5).  In the June 25, 2014 letter, Tonia Fleming, Office Manager for the Ada County Coroner, signing on behalf of the Coroner, explained that "…our disclosure of the information you requested may violate the privacy rights of [D.T.] and subject [Ada County to liability]." (Dkt. 1-3, Ex. B). Despite receiving two more letters explaining DRI's federal statutory authority to request these records on July 21 and 23, 2014, Ada County Deputy Prosecuting Attorney Gene Petty wrote in a letter on August 5, 2014 that "[d]ue to the sensitive nature of these records and the constitutional implications of disclosure, **it is the Ada County Coroner's policy not to release such records** without a court order or

permission from any person whose privacy rights are at risk." (Dkt. 1-3, Ex. G)(emphasis added).

In making such a declaration, Mr. Petty has acknowledged that there is a "policy or custom" which was the moving force behind the Coroner's denial of DRI's records requests. As a result of the Coroner's refusal to promptly allow access to the requested records, DRI has been unable to complete its investigation into the suicide of D.T. (Flores-Brewer Affidavit, ¶14; Vega Affidavit ¶11). Moreover, DRI has been required to devote staff time through repeated attempts to obtain access, including this subsequent litigation, thereby incurring expenses that would not otherwise had been incurred if the Coroner had complied with DRI's federal statutory access rights. DRI has also thereby lost the opportunity to serve other clients further affecting DRI's allocation of staff resources and causing expense to DRI which would not have otherwise been incurred if the Coroner had complied with DRI's federal statutory access rights. Consequently, the court should find there are no material issues of fact in dispute that under section 1983, as the Coroner violated DRI's federal statutory rights under the PAIMI Act to access records to complete an abuse and neglect investigation and grant summary judgment on DRI's counterclaim for a violation of its federal rights under 42 U.S.C. § 1983.

### 5. DRI is entitled to declaratory and injunctive relief to restrain the Coroner from interfering with its records access authority under PAIMI.

In its Counterclaim, DRI has requested the court enter a declaratory judgment holding as follows:

1) That DRI has the right to access the requested records of the Ada County Coroner under PAIMI;
2) That the Ada County Coroner's actions and inactions violated PAIMI; and
3) That the Ada County Coroner immediately gives DRI access to the requested records.

(Dkt. 5, pg. 18). The Coroner has denied that it is legally obligated to provide DRI with the requested records under PAIMI, which is in violation of PAIMI, and that DRI has a right to these

records. (Dkt. 8, pg. 2, 5, 6, 7). Furthermore, in its' Answer to DRI's Counterclaim, the Coroner has stated that "[t]his case asks the court to determine the respective obligations and duties of each party under applicable law. The Coroner will provide DRI with a copy of the records if ordered to do so by the Court." Consequently, declaratory relief would certainly aid in clarifying and settling the legal relations in issue in this case. It would also result in the termination of the proceedings in this case and would afford the parties relief from the uncertainly and controversy they have faced. See *Greater Los Angeles Council on Deafness, Inc. v. Zolin*, 812 F.2d 1103, 1112 (9th Cir. 1987)(quoting *U.S. v. Washington,* 759 F.2d 1353, 1357 (9th Cir. 1985) ("Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties.")

Moreover, it is important to consider that providing such declaratory relief may even "forestall future litigation." *Zolin*, 812 F.2d at 1113. As Idaho's federally mandated protection and advocacy system charged with investigating incidents of abuse and neglect regarding individuals with mental illness, unfortunately, it is likely that in the future, DRI will again be faced with the issue of having to request records from the Coroner's office regarding the death or suicide death of an individual with mental illness in a facility. As the issues presented in this case have not previously been considered by an Idaho District Court any need for future litigation may be forestalled through a public statement of DRI's rights under PAIMI.

DRI has also requested in it it's Counterclaim that the Court enjoin the Coroner, his successors and any other person acting in concert with the Coroner or the successor of the Coroner regarding the following actions or inactions:

I.    Failing to provide to DRI any report, document, or other record relating to D.T., including those records related to D.T.'s death and any investigation thereof, or

relating to any other person who is a client of DRI or whose records DRI is authorized to have access to under PAIMI or other federal law; and

II.  Otherwise interfering with any investigation of abuse and neglect authorized under the PAIMI Act or other federal law.

(Dkt. 5, page 19). According to the United States Supreme Court, a party seeking the issuance of a permanent injunction has the burden establishing the following four factors before the Court may issue injunctive relief: " '(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.'" *Monsanto Co. v. Geertson Seed Farms,* 561 U.S. 139, 156-57 (2010). In determining whether an injunction should issue, the Court must conduct a traditional "balance of harms" analysis. *Lands Council v. Cottrell*, 731 F. Supp. 2d 1028, 1055 (D. Idaho 2010) "The district court must weigh 'the competing claims of injury ... and the effect on each party of the granting or withholding of the requested relief.' " *Id*. (quoting *National Wildlife Fed'n v. Espy,* 45 F.3d 1337, 1343 (9th Cir. 1995)(citations omitted)). Moreover, any injunction issued must be narrowly tailored to give only the relief to which plaintiffs are entitled. *Orantes–Hernandez v. Thornburgh,* 919 F.2d 549, 558 (9th Cir.1990).

In this matter, the Coroner's refusal to acknowledge DRI's authority under PAIMI and to provide DRI with prompt access to the requested records in this case has prevented DRI from fully performing its statutory duty to investigate incidents of abuse, neglect, and injury and to seek remedies to protect the rights of persons with disabilities. 42 U.S.C. §10805(a)(1)(A) and (B). This causes immediate and irreparable harm to DRI and the individuals with disabilities that DRI is designated to protect. There are no other adequate remedies at law to compensate for such injury and has the Coroner has yet to provide such requested documentation, DRI continues to

suffer irreparable harm as a result of the Coroner's actions and inactions. Furthermore, the public interest would not be disserved by the issuance of a permanent injunction as it was Congress itself that empowered P&As such as DRI with the broad federal authority to pursue administrative and legal remedies on behalf of persons with disabilities, which include private rights of action to enforce access to records through the passage of PADD, PAIMI, and PAIR. *See* 42 U.S.C. § 15043(a)(2)(A)(i) (PADD); 42 U.S.C. § 10805(a)(1)(B) (PAIMI); and 29 U.S.C. § 794e(f)(2)-(3) (PAIR).

Moreover, in considering a "balance of harms" in determining whether a permanent injunction should issue, it is important to note that no harm will come to the Coroner's office by requiring them to comply with the provisions of the PAIMI Act, a federal statute. See *Advocacy Ctr. v. Stadler*, 128 F.Supp.2d 358, 368 (M.D. La. 1999) (finding that "the issuance of a permanent injunction in this case does not subject the defendants to a penalty or hardship since it requires them to do exactly what the law requires, i.e. to comply with the law."). In one of its defenses, the Coroner has claimed that a "voluntary disclosure of the records at issue could violate the privacy rights of D.T. and/or expose Ada County to tort action from D.T." (Dkt. 8, pg. 9). However, this claim neglects to acknowledge that as the state of Idaho's P&A, DRI is "under an especially significant duty of confidentiality." *Disability Rights Wisconsin, Inc.*, 463 F.3d at 728. *See, e.g., Czaplewski,* 131 F.Supp.2d at 1052 (noting that nursing home patients would suffer no privacy harm because "federal law requires that . . . the Protection & Advocacy System, keep such records confidential"). Assuming that the Coroner is bound to the same or similar restrictions regarding confidentiality, then this case essentially involves the confidential exchange of information between two agencies. As such, DRI's possession of the information

"seems no more troubling as a privacy matter" than the Coroner's possession. *Disability Rights Wisconsin, Inc.,* 463 F.3d at 729.

Conversely, denying a permanent injunction would substantiate the Coroner's contention that DRI must first obtain a court order prior to the disclosure of records from their office. Such a requirement would require DRI to re-litigate this issue each time it seeks to obtain access to such records, needlessly impeding any ongoing DRI investigation, and in effect, defeating the purpose of the PAIMI act and its implementing regulations. Consequently, the issuance of a permanent injunction is necessary to effectuate the purpose of this federal law.

## III.    CONCLUSION

DRI maintains that the court should dismiss the County and Coroner's complaint for failure to adequately demonstrate that they have standing to bring the complaint in this matter. DRI is further entitled to judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) as the Coroner and the County has failed to allege the existence of a "substantial controversy" between the parties which would entitle them to relief. Moreover, the County has failed to establish itself as a "real party in interest" pursuant to Fed. R. Civ. P. 17(a), requiring its dismissal from the case.

In the alternative, should the court deny DRI's motions to dismiss or motion for judgment on the pleadings, DRI is entitled to summary judgment as there are no genuine issues of material fact and DRI is entitled to judgment as a matter of law pursuant to Fed. R. Civ. P. 56. As the designated Protection and Advocacy System for the State of Idaho , DRI has the authority under the federal PAIMI Act to access the requested records from the Coroner. By refusing to provide DRI with prompt and reasonable access to such records, the Coroner is in violation of PAIMI, entitling DRI to a favorable judgment as a matter of law. Furthermore, the Coroner and the

County has failed to demonstrate that providing such records would violate the privacy rights of D.T. or any other third party in this matter or that they can even assert the privacy rights of such third parties Consequently, it is vital that the Court enter a declaration of DRI's right to access to records under the PAIMI Act and issue an injunction ensuring that these rights are honored by the Coroner in order to effectuate the purposes of this important federal law.

Respectfully submitted this 15th day of June, 2015.

DISABILITY RIGHTS IDAHO, INC.

/s/ Courtney R. Holthus
Courtney R. Holthus
ISB NO. 8841

Attorneys for Defendant/Counter-Claimant

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 15th day of June, 2015, I filed the foregoing

electronically through the CM/ECF system, which caused the following Counsel for the

Plaintiffs and Counter-Defendant to be served by electronic means, as more fully reflected on the

Notice of Electronic Filing:

      Sherry A. Morgan
      Senior Deputy Prosecuting Attorney
      Civil Division
      Ada County Prosecuting Attorney
      200 W. Front Street
      Boise, ID 83702
      *smorgan@adaweb.net*

      By: <u>s/ Courtney R. Holthus_____</u>
         Courtney R. Holthus