CYNTHIA COE, D.C. BAR NO. 438792
Trial Attorney
U.S. Department of Justice
950 Pennsylvania Ave. NW, PHB
Washington, DC 20530
Telephone:  (202) 353-1121
Facsimile:  (202) 514-6903
Email:  Cynthia.Coe@usdoj.gov

WENDY J. OLSON, IDAHO STATE BAR NO. 7634
United States Attorney
CHRISTINE G. ENGLAND, CALIFORNIA STATE BAR NO. 261501
Assistant United States Attorney
District of Idaho
Washington Group Plaza IV
800 East Park Boulevard, Suite 600
Boise, ID 83712-7788
Telephone:  (208) 334-1211
Facsimile:  (208) 334-1414
Email: Christine.England@usdoj.gov

For the United States of America

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| **IN THE MATTER OF DISABILITY RIGHTS IDAHO, INC.'S REQUEST FOR ADA COUNTY CORONER RECORDS RELATED TO THE DEATH OF D.T.** | : : : : | |
| **ERWIN SONNENBERG, in his official capacity as ADA COUNTY CORONER, and ADA COUNTY,** | : : : : | |
| **Plaintiffs,** | : : | **CASE NO. 1:14-CV-369-CWD** |
| **vs.** | : : | |
| **DISABILITY RIGHTS IDAHO, INC., an Idaho nonprofit corporation,** | : : : : | **DEPARTMENT OF JUSTICE STATEMENT OF INTEREST** |
| **Defendant.** | : : | |

**DISABILITY RIGHTS IDAHO, INC., an**      :
**Idaho nonprofit corporation,**           :
                                           :
      **Counter-Claimant,**          :
                                           :
**vs.**                                    :
                                           :
**ERWIN SONNENBERG, in his official**      :
**capacity as ADA COUNTY CORONER,**        :
                                           :
      **Counter-Defendant.**         :
_____  :

## INTRODUCTION

Federal law is clear that protection and advocacy organizations ("P&As") such as counterclaimant Disability Rights Idaho, Inc. ("Disability Rights") have broad access to records to investigate suspected abuse or neglect occurring at mental health treatment facilities. *See* Protection and Advocacy for Individuals with Mental Illness ("PAIMI"), 42 U.S.C. §§ 10801-10851 (1991). Congress granted those expansive investigatory powers to P&As because people with mental illness are "vulnerable to abuse and serious injury" and are "subject to neglect." 42 U.S.C. § 10801(a) (1)-(3). In fulfillment of this important mission, PAIMI grants to P&As access to "records," which includes "reports prepared by an agency charged with investigating reports of incidents of abuse, neglect, and injury occurring at such [a] facility [rendering care and treatment]." 42 U.S.C. § 10806 (b)(3)(A).

In March 2014, D.T. died at an inpatient psychiatric hospital in Boise. In the performance of its statutory duties under Idaho law, counterdefendant Ada County Coroner ("Coroner") investigated the death, conducted an autopsy, ruled D.T.'s death a suicide, and prepared reports. When Disability Rights requested the Coroner's records to investigate the death pursuant to PAIMI, however, the Coroner refused. The Coroner does not dispute that it is "charged with investigating," but argues that its investigation of the suicide did not fall within PAIMI's definition of "records" because the Coroner is not an "agency."

The plain meaning of the word "agency" includes governmental agencies and Congress clearly intended that P&As have access to records of governmental entities such as coroners. The Coroner incorrectly argues that because the Coroner herself is elected, the Coroner's office is not an agency. There is no logic to support why Congress would exempt offices headed by elected officials from within the purview of PAIMI. To the contrary, coroners' investigations may include direct evidence such as autopsy results that may be otherwise unavailable to a P&A.

Denying a P&A access to coroners' records would undermine the P&A's ability to conduct complete and accurate investigations pursuant to PAIMI.  It would also lead to the absurd result that entities such as police, hospitals, mental health facilities, and medical review boards are compelled to comply with PAIMI while the government entity that gathers some of the most crucial information – a coroner's office – could shield its investigatory records from the P&A solely because the leader of the office once appeared on a ballot.  PAIMI should not be interpreted in a manner to undermine Congressional intent, and the Court should rule instead that entities that conduct investigations under authority of state law must comply with PAIMI.

The Coroner's remaining arguments to avoid PAIMI compliance also lack merit.  The Coroner cannot resist access to its records based on Idaho privacy laws because PAIMI expressly preempts conflicting state law.  Nor can the Coroner second-guess the P&A's determination that there is probable cause to investigate – federal law reserves that determination to the P&A.  P&As have a crucial role in investigating neglect and abuse in mental health facilities, and coroners charged with investigating such tragic incidents cannot block P&A access to investigatory records.

## INTEREST OF THE UNITED STATES

The United States submits this Statement of Interest pursuant to 28 U.S.C. § 517 (1966),[1] because this litigation involves the proper interpretation and application of federal law.  As the

---

[1]  Section 517 provides that the "Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States." 28 U.S.C. § 517.  A submission by the United States pursuant to this provision does not constitute intervention under Rule 24 of the Federal Rules of Civil Procedure.

United States has made clear in litigation across the country,[2] it has a strong interest in the

interpretation of the PAIMI Act, 42 U.S.C. §§ 10801–10851.  The Department of Justice has

authority to enforce Title II of the Americans With Disabilities Act, 42 U.S.C. §§ 12133, 12134

(1990), and enforces federal law and the Constitution as it applies to institutional and community

settings.  *See, e.g.,* 42 U.S.C. §1997a (1996).  The national network of P&As plays a significant

role in ensuring compliance with these laws.  *See* U.S. Dep't of Justice, *Statement of the*

*Department of Justice on Enforcement of the Integration Mandate of Title II of the Americans*

*with Disabilities Act and* Olmstead v. L.C*.,* ADA.gov (June 22, 2011),

http://www.ada.gov/olmstead/q&a_olmstead.htm (last visited July 10, 2015) (providing guidance

for ADA and *Olmstead* enforcement).

The Congressional authority afforded to P&As is imperative for the monitoring and

investigation of abuse and neglect of individuals with mental illnesses within these settings.  For

nearly three decades, federal law has made clear that with the appropriation of federal funds to

P&As, they shall have reasonable unaccompanied access to facilities that provide care and

treatment to individuals with mental illness.  42 U.S.C. §§ 10801–10851; 42 C.F.R. § 51.42

(1997).  Supplementing the authority to access facilities is the right of P&As to access records of

an individual with mental illness from either the facility itself or an "agency charged with

investigating reports of incidents of abuse, neglect, and injury occurring at such [a] facility."  42

U.S.C. § 10806 (b)(3)(A); 42 C.F.R. §51.41 (1997).

---

[2]  *See, e.g.*, Statement of Interest of the United States, *Ala. Disabilities Advocacy Program v. SafetyNet Youthcare*, 13-0519-CG-B, (S.D. Ala. Oct. 14, 2014); Statement of Interest of the United States, *Disability Rights Miss. v. Miss. Children's Home Servs.*, 3:13-CV-547-HTW-LRA, (S.D. Miss. Feb. 5, 2014); Statement of Interest of the United States, *Ga. Advocacy Office, Inc., v. Shelp,* 1:09-CV-2880-CAP (N.D. Ga. June 10, 2010); Statement of Interest of the United States, *Ind. Prot. & Advocacy Servs. v. Ind. Family & Soc. Servs. Admin.*, No. 1:06-cv-1816 (S.D. Ind. June 16, 2008); Brief for Intervenor United States, *Iowa Prot. & Advocacy Servs., Inc. v. Tanager*, Inc., 427 F.3d 541 (2005), No. 04-4074 (8th Cir. May 11, 2005).

## FACTS

For purposes of this Statement of Interest, the United States will summarize the facts based on the allegations of the parties in their pleadings, statements of material facts, and summary judgment briefs.  Aside from the legal issues raised in this Statement of Interest, the United States does not take a position on the relative merits of the parties' claims.

## I.      DISABILITY RIGHTS' PAIMI INVESTIGATION OF D.T.'S DEATH.

On or about March 2014, Disability Rights received a report that an individual with mental illness had died at a psychiatric hospital.  Disability Rights' Answer and Counterclaim ("Counterclaim") ¶¶ 32, 34 (Dkt. # 5).  Disability Rights contacted the hospital, which provided to Disability Rights the confidential patient records related to D.T.'s psychiatric care and treatment and the circumstances of D.T.'s death.  *Id.* ¶ 35.  Disability Rights alleges that it determined there was probable cause to believe that D.T.'s death may have resulted from abuse or neglect, and it commenced a PAIMI investigation.  *Id.* ¶ 36.

As part of its investigation, Disability Rights sought investigatory records from several sources.  Disability Rights requested records and information from the Boise Police Department, which complied with the request.  *Id.* ¶ 45.  Disability Rights also sought records and information from the hospital, which complied with the request.  *Id.* ¶¶ 35, 45.

When Disability Rights requested investigatory records from the Ada County Coroner, however, the Coroner refused.  On May 29, 2014, Disability Rights sent a letter to the Coroner requesting copies of any "autopsy reports, coroners' reports, inquest transcripts, investigative reports, medical and toxicology reports, and other records or documents that were reviewed or relied upon in reaching the conclusions and findings concerning [D.T's] death."  Disability Rights Statement of Undisputed Material Facts ("Disability Rights' Statement"), ¶ 15 (Dkt. # 31-

5

2).  On July 21, 2014, the Coroner sent to Disability Rights a copy of the Coroner's Public

Information Report but refused to provide its investigatory records.  *Id.* ¶¶ 18, 20, 21.  The

Coroner made three arguments:  (1) The Coroner's investigatory records were not subject to

disclosure under PAIMI, (2) disclosing the records would violate privacy concerns of D.T.,

D.T.'s family, and individuals who interacted with D.T., and (3) disclosure would require a court

order or permission from persons whose privacy rights are at risk.  Disability Rights' Statement

¶ 23.

## II.     THE OPERATION AND RESPONSIBILITIES OF THE ADA COUNTY CORONER'S OFFICE.

Idaho coroners are charged by statute with "investigat[ing] . . . death [that] occurred as a

result of violence, whether by homicide, suicide, or by accident;"  Idaho Code Ann. §19-4301 (1)

(a) (2005); Coroner's Statement of Material Facts ("Coroner's Statement") at 2 (Dkt. # 32-2).

The Ada County Coroner is elected to that office (Coroner's Statement at 2) and runs the

Coroner's office.  To perform the work of the Coroner's office, the Coroner "has appointed

deputies and oversees those deputies."  Answer to Counterclaim of Disability Rights Idaho, Inc.

Against Erwin Sonnenberg ("Coroner's Answer") at 3 (Dkt. # 8); *see* Idaho Code Ann. § 31-

2809 (1970) ("A coroner may appoint a deputy or deputies as he deems necessary").  In addition,

the Coroner employs a pathologist who performs autopsies.  Coroner's Answer at 3.  The

Coroner's 18-person staff includes forensic technicians, an anthropologist, medicolegal

investigators, administrators and consultants.  Ada County, Idaho, website,

https://adacounty.id.gov/coroner (last visited July 13, 2015).

The Coroner's office is a part of the Ada County government.  The Coroner's budget ($1,634,454 in 2013) is paid from Ada County's general fund.[3]  Deputy coroners are "paid at a rate fixed by the county commissioners."  Idaho Code Ann. § 31-2809.  Under some circumstances, the Ada County commissioners have the power to remove the Coroner or confirm a coroner appointed by the executive.  Idaho Code Ann. § 31-5213 (coroner may be "appointed by the executive with the advice and consent of the board of county commissioners," or the commissioners may eliminate the coroner's office in favor of an elected or appointed replacement).  The 2013 Ada County budget lists the Coroner as a "department" under the category "Governmental," and the Coroner has a webpage on the County's website.[4]  And as the pleadings in this case demonstrate, both Ada County and the Coroner filed this declaratory relief action and are represented by the Ada County prosecuting attorney, even though Disability Rights directed its records access request to the Coroner.  Disability Rights Statement ¶ 15; Coroner's Statement at 2-3.

## ARGUMENT

Congress created a system of independent protection and advocacy organizations in response to a history of widespread abuse and neglect of individuals with disabilities by the facilities charged with their care.  Following the creation of the nationwide P&A system through passage of the Developmentally Disabled Assistance and Bill of Rights Act in 1975, Pub. L. No. 94-103, 89 Stat. 486 (1975) (originally codified at 42 U.S.C. §§ 6041-6043 and currently at 42

---

[3]  *See* Ada County State of Idaho, 2014-2015 Ada County Final Budget, ("Ada County Budget"), https://adacounty.id.gov/Portals/0/CAR/Financial/Ada%20County%20FY15%20Adopted%20Budget.pdf (last visited July 13, 2015).  This Court may take judicial notice of the Ada County budget under Fed. R. Evid. 201.  *See Coleman v. Schwarzenegger*, No. C01-1351 TEH, 2009 WL 2407404, at *2 (E.D. Cal. Aug. 4, 2009) (taking judicial notice of California state budget).

[4] *See* Ada County Budget at ii, 10; *About the Coroner*, Ada County Idaho, https://adacounty.id.gov/coroner (last visited July 13, 2015).

U.S.C. §§ 15041-15045), Congress has continued to expand the authority of P&As to protect individuals with disabilities.  The PAIMI Act, 42 U.S.C. §§ 10801-10851, extended the P&As' role to include protection of persons with mental illness.  Amendments to the PAIMI Act in 2000 further ensured that P&As protect individuals with mental illness who reside in the community, including their own homes.  Children's Health Act of 2000, Pub. L. No. 106-310, Div. B, Title XXXII, § 3206(b)(1)(B), 114 Stat. 1101, 1194 (codified at 42 U.S.C. § 10802(4)(B)(ii)).  Thus, the P&A system was designed to ensure that individuals with disabilities, who are some of the most vulnerable members of society, have access to independent advocates and are protected from abuse and neglect wherever they receive care or treatment.

To ensure that P&As can carry out their federal mandate to protect and advocate for individuals with disabilities, the PAIMI Act and implementing regulations define certain key aspects of the P&As' authority.  P&As have the right to access facilities, records, and individuals to investigate possible abuse and neglect, to conduct monitoring activities, and to educate individuals about their rights.  42 U.S.C. §§ 10801(b)(2), 10805; 42 C.F.R §51.42.  Central to the P&As' ability to fulfill their function, the PAIMI statute authorizes P&As to exercise their authority independently.  42 U.S.C. § 10805(a)(2).  Congress also vested P&As with comprehensive authority to investigate abuse and neglect whenever the P&A receives a complaint or determines probable cause.  42 U.S.C. § 10801(b)(2)(B).  To ensure a swift and adequate investigation, P&As have the sole discretion to determine probable cause.  42 C.F.R. § 51.41(b)(2)-(3).

**I.**     **THE CORONER'S OFFICE IS AN "AGENCY CHARGED WITH INVESTIGATING" UNDER PAIMI AND MUST PRODUCE ITS RECORDS.**

The PAIMI Act and implementing regulations allow P&As to access "records" in conducting their investigations.  42 U.S.C.A. § 10806 (b)(3)(A).  The term "records" is defined as including:

> [R]eports . . . *prepared by an agency charged with investigating reports of incidents of abuse, neglect, and injury* occurring at such facility that describe incidents of abuse, neglect, and injury occurring at such facility and the steps taken to investigate such incidents, and discharge planning records.

42 U.S.C. § 10806 (b)(3)(A) (emphasis added).  *See also* 42 C.F.R. § 51.41 (c)(2)(defining "[i]nformation and individual records" as including "[r]eports prepared by an agency charged with investigating abuse, neglect, or injury occurring at a facility rendering care or treatment").  Neither the PAIMI Act nor the implementing regulations further define the phrase "agency charged with investigating."

The starting point for interpreting statutory language is the language itself.  *Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 951 (9th Cir. 2009) (in construing a statute, the court "first looks[s] to the language of the statute to determine whether it has a plain meaning").  If the statutory text is ambiguous, courts may "look to other interpretive tools" to determine the statute's best meaning.  *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1181 (9th Cir. 2013) (although a statute was "poorly drafted," its meaning was clear when "interpreted collectively and in context, and read together with the statute's purpose and legislative history").  *See also United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 242 (1989) (when "the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters . . . the intention of the drafters, rather than the strict language, controls."); *Jonah R. v. Carmona*, 446 F.3d 1000, 1005 (9th Cir. 2006) (courts may use "canons of construction" to discern Congressional intent).

**A.      The Phrase "Agency Charged with Investigating" Includes the Coroner's Office Because It Is a Division of Government.**

The Coroner's office is an "agency charged with investigating" because it is a division of the Ada County government that is responsible for investigating deaths.  As the Coroner cites, the Merriam Webster dictionary defines "agency" as "an administrative division (as of a government)."  Coroner's Memorandum in Support of Motion for Summary Judgment ("Coroner's Mem.") at 9.   Even though the plain meaning of the word "agency" includes a governmental entity, the Coroner denies that it is an agency because the Coroner "is an independent, elected office pursuant to the laws and constitution of the state of Idaho, and determines the cause and manner of death."  Coroner's Mem. at 9.[5]  The Coroner's office is an "agency" within the meaning of PAIMI because it is a governmental entity.  That the Corner is elected and the office performs its work independently is irrelevant.

There can be no question that the Ada County Coroner's office is part of the County and functions as an administrative division of government.  The Ada County government decides the pay of the Coroner's office deputies and pathologist and pays them from county funds.  The Ada County commissioners have the power to remove the Coroner or confirm a coroner appointed by the executive.  The Ada County prosecutor is representing the Coroner presumably at Ada County taxpayer expense in this litigation – a representation that is improper if the Coroner is not an arm of county government.[6]  The Coroner's office cannot remove itself from County government solely for the purposes of litigation.

---

[5]  Instead of explaining why it believes it is not an administrative division of government, the Coroner lists its many official duties pursuant to the Idaho constitution and statutes.  *See* Coroner's Mem. at 9-11.  That the Coroner acts under authority of state law further supports the interpretation that the Coroner is an administrative division of government.

[6]  *See* Idaho Code Ann. § 31-2604 ("It is the duty of the prosecuting attorney. . . [t]o prosecute or defend all actions, applications or motions, civil or criminal, in the district court of his county in which the people, or the state, or the county, are interested, or are a party").

That the Coroner is elected rather than appointed or hired is not dispositive.  *See* Coroner's Mem. at 9.  Whether an entity is a division of government does not turn on whether the head of the office was elected.  What matters is the role the entity fulfills – in this case, an official role to administer certain business of the county.[7]  The Coroner's argument would lead to the illogical result that PAIMI compliance could turn on whether an agency head was elected – a result Congress never intended.  The Coroner's office is properly viewed under PAIMI as an "agency charged with investigating" because that is what it exists to do -- regardless of how the Coroner acquired the position.

One federal court has confirmed that a coroner's office should be viewed as an "agency charged with investigating" under PAIMI.  In *Wisconsin Coal. For Advocacy, Inc. v. Busby*, Case No. 02-C-871 *12 (E.D. Wis. September 24, 2003), the Winnebago County coroner refused for three months to comply with the P&A's request for records, claiming the documents were not "records" under PAIMI.  *Id*.  The district court disagreed, holding that "A coroner's office is an agency charged with investigating deaths (certainly a form of injury), . . . ." so its investigatory records "fall within the P&A system access authority."  *Id*. at 12-13.[8]

The Seventh Circuit Court of Appeals rejected an agency's similar attempt to split hairs with the meaning of "agency charged with investigating" in order to avoid producing records

---

[7]  The Coroner's office performs numerous governmental tasks as *parens patriae* where no one steps forward to take charge of the decedent.  The Coroner buries or cremates unclaimed bodies, disposes of property found on a corpse, and issues statements to the county commissioners regarding the property of a deceased in the Coroner's possession.  Coroner's Mem. at 9.

[8]  An Idaho Supreme Court decision also supports a finding that the Ada County Coroner is an administrative division of government.  *Dep't. of Emp't v. Ada County Fair Bd.*, 96 Idaho 591, 593-95 (1974), turned on the issue of whether the Ada County Fair Board was an "administrative division of county government."  *Id.*  The Fair Board was statutorily authorized, it was funded in Ada County's budget, the county commissioners had the power to select the Fair Board's members, and the Fair Board's funds ultimately belonged to the general fund of Ada County.  The Idaho Supreme Court noted that Ada County held ultimate control over the Fair Board's existence and thus, the Fair Board was an administrative division of Ada County and "services performed by the Fair Board ipso facto are performed by the county's employ."  *Id.* at 594.

under PAIMI. *Disability Rights Wisconsin, Inc. v. Wisconsin*, 463 F.3d 719, 726-27 (7th Cir.

2006). In *Disability Rights Wisconsin*, the court found that it was "beside the point" that the

agency at issue was not "charged" with investigating reports of abuse or neglect because the

agency "did in fact investigate complaints of potential abuse or neglect." *Id.* The court found

that preventing the P&A from obtaining information it needed to investigate "on the basis that

DPI did something it was not required to do" would frustrate the goals of the P&A system. *Id.*

### B. Congress Intended that the PAIMI Act Apply to Administrative Divisions of Government Such as the Coroner.

Congress clearly intended that PAIMI apply to state and local governmental entities. The

PAIMI legislative history indicates that the term "agency" refers to "any *State, county, or

municipal* agency charged with the responsibility of investigating incidents of abuse and neglect

in public residential facilities for the treatment of mentally ill individuals." S. 2393, 100th Cong.,

134 Cong. Rec. S14450-03, 1988 WL 180662; S.2393, 100th Cong., 134 Cong. Rec. H9648-01

(1988), 1988 WL 177000 (emphasis added). Moreover, the P&A system was designed to ensure

that individuals with disabilities have access to independent advocates and are protected from

abuse and neglect wherever they receive care or treatment. *See* S. Rep. No. 99-109, at 10 (1985),

*reprinted in* 1986 U.S.C.C.A.N. 1361, 1370 ("The Committee recognizes the need for full access

to facilities and clients and to their records in order to ensure the protection of mentally ill

persons. It is the intent of the Committee that the [P&A system] have the fullest possible access

to client records . . . .").

Interpreting "agency charged with investigating" to include a coroner's office is

consistent with the purpose of PAIMI. One tool at the P&A's disposal is the ability to obtain

records to aid in its investigation. Coroner's offices are in a unique position to provide

indispensible evidence in an investigation and may be the only entities that perform a detailed

examination of the decedent's body.  If coroners can withhold their records, an important

investigatory tool will be lost to P&As, and their ability to investigate will be compromised.

That is not what Congress intended.

Indeed, including coroners within "agency charged with investigating" is a sensible

interpretation that gives meaning to every word.  The inclusion of the word "agency" can

distinguish official state actors like coroners from those who might conduct an investigation for

other reasons.  For instance, a journalist might be said to "investigate" a death, but the journalist

is not performing governmental duties and so is not an "agency charged with investigating."

That understanding of "agency" makes sense in the PAIMI regulatory scheme, and a state,

county or municipality's legally authorized investigators such as coroners fall within it.[9]

## II.   THE CORONER'S CONFIDENTIALITY ARGUMENT DOES NOT JUSTIFY DENIAL OF ACCESS TO ITS INVESTIGATORY RECORDS UNDER PAIMI.

The Coroner argues that allowing Disability Rights to access its investigatory records

under PAIMI "would be an unwarranted invasion of personal privacy for D.T. and D.T.'s family

members, as well as an invasion of the personal privacy rights of hospital employees and family

members mentioned in those records"  Coroner's Mem. at 14.  The Coroner also raises the

possibility of facing a lawsuit under state or federal law for breach of privacy if it were to allow

Disability Rights to access the records.  *Id*. at 14.

PAIMI expressly preempts conflicting state laws.  PAIMI's "statutory language provides

that state laws that prohibit access to records otherwise allowed under the PAIMI Act 'shall not

apply'. . . . "  *See Disability Rights North Carolina v. Frye Regional Medical Center, Inc.*, No.

---

[9]  Construing "agency" to mean an "administrative division of government" in this case does not preclude other interpretations in different circumstances.  For instance, a county might contract privately for the services of a coroner.  In that case, the private coroner may not be an "administrative division of government" but may instead have an "agency" relationship with its principal, the county.  This Court need not address the question of alternative definitions for purposes of this case, however.

5:13-CV-102, 2014 WL 5810458, at *3 (W.D. N.C 2014).  *See also Iowa Prot. & Advocacy Servs., Inc. v. Rasmussen*, 206 F.R.D. 630, 639 (S.D. Iowa 2001) (P&As are "independent checks on state care" that would be meaningless if states could legislate away a P&A system's power to investigate).  To the extent Idaho law prevents the release of the Coroner's records, PAIMI preempts those laws and mandates that the Coroner release them to Disability Rights.  *Prot. & Advocacy For Persons With Disabilities v. Armstrong*, 266 F. Supp. 2d 303, 319-21 (D. Conn. 2003) (finding that PAIMI preempts state confidentiality law under the Supremacy Clause of the United States Constitution).[10]

Moreover, PAIMI directly addresses the Coroner's concerns about confidentiality concerning records, family members and witnesses.  PAIMI obligates a P&A to maintain records in a confidential manner:

> *An eligible [P&A] system* which, pursuant to section 10805 (a)(4) of this title, has access to records which, under Federal or State law, are required to be maintained in a confidential manner by a provider of mental health services, *shall*, except as provided in subsection (b) of this section, *maintain the confidentiality of such records to the same extent as is required of the provider of such services.*

42 U.S.C.A. § 10806(a) (emphasis added).  Courts have found that PAIMI's confidentiality requirements provide sufficient protection, and a P&A need not obtain consent of next of kin to obtain records.  *Armstrong*, 266 F. Supp. 2d at 320 (holding that PAIMI already addresses the

---

[10]  Numerous other cases are in accord.  *Mo. Prot. & Advocacy Servs. v. Mo. Dep't of Health*, 447 F.3d 1021, 1024 (8th Cir. 2006) (PAIMI preempts conflicting state law); *Center For Legal Advocacy v. Hammons*, 323 F.3d 1262, 1272 (10th Cir. 2003) (holding that medical peer review and quality assurance records are accessible to the P&A); *Pennsylvania Protection & Advocacy, Inc. v. Houstoun*, 228 F.3d 423, 428 (3d Cir. 2000) (holding the PAIMI Act preempts any state law giving a healthcare facility the right to withhold records); *Wisconsin Coalition for Advocacy, Inc. v. Czaplewski*, 131 F. Supp. 2d 1039, 1049 n. 3 (E.D. Wis. 2001) (holding that PAIMI preempts state statute where it interferes with P&A access to records); *Oklahoma Disability Law Center, Inc. v. Dillon Family and Youth Services, Inc.*, 879 F. Supp. 1110, 1112 (N.D. Okla. 1995) (finding that the PAIMI Act preempts state law requiring court order before release of records).

confidentiality of patient records).  As a result, the Coroner's records in a PAIMI investigation will be as protected from unlawful disclosure as when they are in the custody of the Coroner.

Finally, the Coroner's reliance on *Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1154 (9th Cir. 2012), for the argument that a federal common-law right of privacy trumps PAIMI is misplaced.  In *Marsh*, a prosecutor copied autopsy photographs of the plaintiff's deceased child to keep as a "memento," then released them to a newspaper and a television station.  *Id.* at 1152. The Ninth Circuit found the prosecutor's conduct "shocks the conscience" and violated the plaintiff's substantive due process right to be free of "unwarranted public exploitation by the government."  *Id.* at 1154-55.

This case is nothing like *Marsh*.  The P&A seeks the Coroner's investigatory records for a legitimate purpose pursuant to a federal statute that expressly grants that access.  PAIMI does not allow the P&A to disseminate the records publicly and instead specifically requires that they be maintained in confidence.  These protections are meant to ensure that the P&A can use the Coroner's records to conduct its investigation while respecting the privacy and confidentiality of family members and witnesses.

## III.   DENYING ACCESS TO THE CORONER'S RECORDS IS CONTRARY TO PUBLIC POLICY.

Blocking PAIMI access to the Coroner's records would seriously undermine Disability Rights' efforts to learn what happened to D.T and why.  Autopsies involve "inspecting and sometimes dissecting the corpse to determine the cause and manner of death and to detect what diseases may be present."  Coroner's Mem. at 11.  Autopsy reports contain "detailed descriptions of the dead body" and "frequently explain how the death occurred."  *Id.*  The Coroner's investigation can contain "family members and witnesses' statements about the death, along with those individuals' names and contact information."  *Id.*  Medical examiners and coroners possess

15

this sort of direct and crucial evidence, and a P&A often cannot readily obtain the evidence from another source.  If the Ada County Coroner denies access to its investigatory files, Disability Rights would be deprived of facts needed to perform a complete investigation.

A decision denying P&A access to coroners' records could have implications far beyond the borders of Ada County.  In 2004, medical examiners and coroner offices, charged with investigating suspicious or unexpected deaths, investigated roughly one-fifth of all U.S. death cases.[11]  All 50 states and the District of Columbia have either a statewide coroner system, a county-based medical examiner system, or a mixture of the two, with a total of almost 2,000 investigative offices nationwide.[12]  In 2004, county coroner offices made up 80 percent of these systems (1,590), and the coroners were, in general, elected.[13]  Medical examiners' and coroners' roles in investigating possible suicides are particularly important because there are "a number of reasons, civil as well as cultural, to conceal information about suicide."  Cyril H. Wecht M.D., J. D., *Introduction*, 1 Quinnipiac Health L.J. 7, 13 (1996).  An "experienced, suspicious and thorough investigator" will gather the types of information from the death that enables a county coroner to detect evidence of abuse, neglect, or injury that the PAIMI Act is meant to correct.  *Id.* *Cf.* §10805(a)(4); S. Rep. No. 102-114, at 3 (1991) (recommending the provision for access to records be clarified to afford a "significantly increased" level of authority for P&As after finding that PAIMI mandates have not fully been met).  The impact of placing coroners' investigative

---

[11]  Matthew J. Hickman, Ph.D. & Kristen A Hughes, MPA, Department of Justice, *Medical Examiners and Coroners' Offices* 1 (2004).

[12]  *Id.*

[13]  *Id.*

records off limits to P&As would be felt nationwide and would frustrate public policy favoring the broad access to records that PAIMI grants to P&As.[14]

Nevertheless, the Coroner argues that allowing P&As access to investigatory records "could significantly impact the effective administration of Idaho's state criminal justice system" and financially burden Idaho county coroners.  Coroner's Mem. at 14.  The Coroner's speculation that disclosing its records will somehow compromise criminal investigations statewide misunderstands the effect of PAIMI access.  The P&A does not confiscate the coroner's records, make them unavailable to the criminal justice system, or in any way interfere with the coroner's ability to do her job.  Access means only that, and nothing precludes an Idaho coroner's office from continuing to fulfill its statutory duties while also complying with PAIMI.

Finally, the Coroner argues that allowing Disability Rights to access its investigatory files would impact the work of coroners across Idaho.  Because the Ada County Coroner performs forensic work for 28 other Idaho coroners who cannot afford their own pathologists, the Coroner claims that this Court's decision "will impact whether the Ada County Coroner must disclose the autopsy reports created for other Idaho counties and, therefore, this case could have repercussions . . . throughout southern and eastern Idaho."  Coroner's Mem. at 15.

That is all the more reason that this Court should be clear and firm in its decision granting records access to Disability Rights.  PAIMI grants to P&As "broad investigatory authority." *Disability Rights Wisconsin*, 463 F.3d at 725.  Pursuant to PAIMI, Disability Rights is empowered to investigate throughout Idaho and should not have to relitigate its authority in

---

[14]  In FY 2012, P&A's nationwide handled 1,978 abuse/neglect investigations.  *See Protection and Advocacy for Individuals with Mental Illness Program (PAIMI) Fact Sheet*, National Disability Rights Network (2013), www.ncmhr.org/downloads/PAIMI-fact-sheet-2013.pdf (last visited July 16, 2015).

county after county.  This Court's decision will make clear to each Idaho coroner's office that

PAIMI applies to them, and they should comply with P&As' lawful requests for records.

## IV.    THE P&A HAS AUTHORITY TO DETERMINE WHEN PROBABLE CAUSE EXISTS.

P&As operate as part of a federally-authorized state-wide system to protect and advocate

for individuals with mental illness.  42 U.S.C. § 10801(b)(2).  The PAIMI Act authorizes P&As

to "investigate incidents of abuse and neglect of individuals with mental illness if the incidents

are reported to the system or *if there is probable cause to believe that the incidents occurred*."

*Id.* § 10801(b)(2)(B) (emphasis added); *see also* § 10805(a)(1)(A).  The PAIMI implementing

regulations require that a P&A seeking records have received a complaint or report and "that

there is probable cause to believe that the individual has been or may be subject to abuse or

neglect."  42 C.F.R. § 51.41.

The Coroner objects to providing investigatory records on the grounds that Disability

Rights has not proved probable cause to the Coroner or the Court.  Coroner's Mem. at 7 n.9.  The

Coroner is unwilling to accept Disability Rights' "independent conclusion that there is probable

cause to believe that D.T. was subject to abuse or neglect."  *Id*.

PAIMI does not allow the Coroner to second-guess Disability Rights' determination of

probable cause.  In *Arizona Ctr. for Disability Law v. Allen*, 197 F.R.D. 689, 692 (D. Ariz.

2000), a state behavioral health agency refused to allow a P&A access to records under PAIMI.

The health agency withheld some files because it disagreed that there was probable cause to

believe abuse or neglect occurred.  *Id.* at 691.  The court held that the P&A "is the final arbiter of

probable cause for the purpose of triggering its authority to access all records for an individual

that may have been subject to abuse or neglect."  *Id*. at 693. The court reasoned, "To conclude

otherwise would frustrate the purpose of the P & A laws to establish an effective system to

protect and advocate for the rights of individuals with disabilities." *Id*. If Disability Rights believes it has probable cause to investigate, PAIMI requires the Coroner to cooperate.[15]

Nor may the Coroner put Disability Rights to the task of proving probable cause in court. A P&A's probable cause determination does not require judicial review. *Armstrong*, 266 F. Supp. 2d at 321 ("[C]ourts have rejected attempts to require judicial review of the P & A's probable cause determination"). *See, e.g.*, *Prot. & Advocacy Sys., Inc. v. Freudenthal*, 412 F. Supp. 2d 1211, 1219 (D. Wyo. 2006) (P&A is the final arbiter of probable cause); *Ctr. For Legal Advocacy v. Earnest*, 188 F. Supp. 2d 1251, 1257 (D. Colo. 2002) (state may not reevaluate P&A's determination of probable cause), *rev'd on other grounds*, 320 F.3d 1107 (10th Cir. 2003); *Iowa Prot. & Advocacy Servs.,* 206 F.R.D. at 638 (the P&A, not a state agency, shall make the relevant probable cause determination).

There is good reason that P&As need not obtain a court order to obtain access to records under PAIMI. Requiring P&As to go to court every time they seek records under PAIMI would frustrate the goals of PAIMI and unnecessarily burden the P&A. *See Advocacy Ctr. v. Stalder*, 128 F. Supp. 2d 358, 364 (M.D. La.1999) ("[I]t cannot be disputed that the delay in getting a court order frustrates the goal of the [PAIMI] Act."); *Okla. Disability Law Ctr., Inc. v. Dillon Family and Youth Servs., Inc.*, 879 F. Supp. 1110, 1112 (N.D. Okla. 1995) ("The timely access guaranteed by the Act should not be stripped of all meaning by requiring advocacy hearings to survive an application for a court order."). As a recent evaluation of the PAIMI Act found,

---

[15] *See generally Ala. Disabilities Advocacy Program v. J.S. Tarwater Developmental Ctr.*, 894 F. Supp. 424, 429 (M.D. Ala. 1995) (a showing of probable cause "does not involve establishing what actually happened but presenting evidence in the record that supports allegations of abuse and neglect."), *aff'd*, 97 F.3d 492 (11th Cir. 1996). Either the receipt of a complaint or a determination of probable cause will suffice. *Cf. J.S. Tarwater Developmental Ctr.*, 97 F.3d at 498 (discussing the separate basis for seeking access to records under the DD Act); *Equip for Equal., Inc. v. Ingalls Mem'l Hosp.*, 292 F. Supp. 2d 1086, 1095 (N.D. Ill. 2003) (recognizing that a P&A has "broad access to patients and facilities" as the result of "an investigation, a reported incident, a complaint, the existence of probable cause of abuse, or the existence of imminent danger of serious abuse or neglect").

"When forced to litigate access issues, significant portions of [a P&A's] limited resources are consumed – resources that would better be used moving the nation's mental health system forward."  Substance Abuse and Mental Health Servs. Admin., HHS Pub. No. PEP12-EVALPAIMI, *Evaluation of the Protection and Advocacy for Individuals With Mental Illness (PAIMI) Program, Phase III:  Evaluation Report* 87 (2011).  Entities that possess records covered by PAIMI should not be permitted to delay the P&A's investigation and divert P&A resources to litigation by conditioning access on a court order.

## CONCLUSION

The PAIMI Act is a critical component in the system of legal protections for people with disabilities and its words must be given full force and effect.  This Court should affirm that the PAIMI Act and regulations require county coroners to comply with federal law and provide investigatory records consistent with PAIMI.

Respectfully submitted,

VANITA GUPTA
Principal Deputy Assistant Attorney General
Civil Rights Division

EVE L. HILL
Deputy Assistant Attorney General
Civil Rights Division

JUDY C. PRESTON
Acting Chief
Special Litigation Section

REGAN RUSH
Special Litigation Counsel
Special Litigation Section


/s/ *Cynthia Coe*
CYNTHIA COE
D.C. Bar No. 438792
Trial Attorney
Special Litigation Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave. NW, PHB
Washington, DC 20530
Telephone:  (202) 353-1121
Facsimile:  (202) 514-6903
Email:  Cynthia.Coe@usdoj.gov


For the United States of America

/s/ *William B. Schultz*
WILLIAM B. SCHULTZ
DC BAR NO. 218990
General Counsel
Department of Health & Human Services,
Office of the General Counsel
200 Independence Avenue, SW, Room 713F
Washington, DC 20201
Telephone:  202-690-7741
Facsimile:  202-690-7998


WENDY J. OLSON
IDAHO STATE BAR NO. 7634
United States Attorney
District of Idaho

CHRISTINE G. ENGLAND
CALIFORNIA STATE BAR NO. 261501
Assistant United States Attorney
District of Idaho
Washington Group Plaza IV
800 East Park Boulevard, Suite 600
Boise, ID 83712-7788
Telephone:  (208) 334-1211
Facsimile:  (208) 334-1414
Email: Christine.England@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on July 20, 2015, I electronically filed the United States' Statement of Interest with the Clerk of the Court using the CM/ECF system, which will automatically send email notification of such filing to the attorneys of record.


/s/Jessica Black_____
Jessica Black
Civil Legal Assistant
District of Idaho
Washington Group Plaza IV
800 East Park Boulevard, Suite 600
Boise, ID 83712-7788