UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

IN THE MATTER OF DISABILITY
RIGHTS IDAHO REQUEST FOR ADA
COUNTY CORONER RECORDS
RELATING TO THE DEATH OF D.T.,
_____

ERWIN SONNENBERG, in his official
capacity as ADA COUNTY CORONER,
and ADA COUNTY,


Plaintiffs/Counter-Defendants,

v.

DISABILITY RIGHTS IDAHO, INC.,
an Idaho nonprofit corporation,


Defendant/Counter-Claimant.

Case No. 1:14-CV-00369-EJL

**MEMORANDUM DECISION AND
ORDER**

This matter is before the Court on a Motion to Dismiss, Motion for Judgment on the

Pleadings and Motion for Summary Judgment by Defendant/Counter-Claimant DisAbility Rights

Idaho, Inc. (Dkt. 31) and a Motion for Summary Judgment by Plaintiffs/Counter-Defendants

Erwin Sonnenberg, in his official capacity as Ada County Coroner, and Ada County (Dkt. 32).

The issues have been fully briefed and are ripe for the Court's consideration.

Having fully reviewed the record herein, the Court finds that the facts and legal

arguments are adequately presented in the briefs and record.  Accordingly, in the interest of

avoiding further delay, and because the Court conclusively finds that the decisional process

**MEMORANDUM DECISION AND ORDER- 1**

would not be significantly aided by oral argument, the motions shall be decided on the record before this Court without a hearing.

## FACTUAL BACKGROUND

This case arises from DisAbility Rights Idaho, Inc.'s ("DRI") request for various reports prepared by Ada County Coroner Erwin Sonnenberg (hereinafter "Coroner") during his investigation of the death of a patient at a local hospital.1   DRI is a non-profit corporation which has been designated by the State of Idaho to protect and advocate on behalf of people with mental illness, as defined in the Protection and Advocacy for Individuals with Mental Illness Act of 1986, 42 U.S.C. § 10801 et. seq. ("PAIMI").

In March 2014, D.T. was involuntarily committed at an inpatient psychiatric hospital located in Boise, Idaho.  (Dkt. 31-2, ¶ 9.)  Shortly thereafter, D.T. died.   In the performance of his statutory duties under Idaho law, the Coroner investigated D.T.'s death, conducted an autopsy, prepared reports, and ruled D.T.'s death a suicide. (Dkt. 32-2, p. 2.)

At DRI's request, the psychiatric hospital provided DRI with the confidential patient records related to D.T.'s psychiatric care and treatment and the circumstances of D.T.'s death. (Dkt. 31-2, ¶ 13.)   DRI alleges a review of such records led it to determine there was probable cause to believe that D.T.'s death may have resulted from abuse or neglect, and that it thereafter commenced its PAIMI investigation.   (*Id*., ¶ 14.)

In furtherance of this investigation, DRI sent the Coroner a letter on May 29, 2014

---

1 Dotti Owens became the duly elected coroner for Ada County as of January 1, 2015.   Because Erwin Sonnenberg was named as a party to this case in his official capacity, Dotti Owens, as his successor, is automatically substituted as a party pursuant to Federal Rule of Civil Procedure 25(d).

**MEMORANDUM DECISION AND ORDER- 2**

identifying itself as Idaho's Protection and Advocacy System ("P&A"), and requesting copies of any "autopsy reports, coroners' reports, inquest transcripts, investigative reports, medical and toxicology reports, and other records or documents that were reviewed or relied upon in reaching the conclusions and finding concerning [D.T.'s] death."   (*Id.*, ¶ 15.)   After several rounds of discussion between the parties, the Coroner refused to provide D.T.'s records, and, together with Ada County, ultimately filed an action against DRI in Idaho State Court ("state court action"). The state court action sought a declaratory judgment holding the Coroner was not required by state or federal law to provide DRI with the records it requested related to D.T.'s suicide, and that providing such records to DRI would violate the privacy rights of D.T., D.T.'s family, and/or individuals who interacted with D.T.   (Dkt. 1-3.)

DRI removed the state court action to this Court and filed a counterclaim against the Coroner.   (Dkt. 1; Dkt. 5.)   DRI's counterclaim seeks injunctive and declaratory relief under PAIMI and 42 U.S.C. § 1983, as well as attorney fees and costs under § 1983.   After the Coroner and Ada County unsuccessfully moved to remand this action to state court,[2] the parties filed the pending motions.   The Department of Justice subsequently submitted a Statement of Interest pursuant to 28 U.S.C. § 517 because this case involves the proper interpretation and application of federal law.   (Dkt. 40.)

## STATUTORY BACKROUND

Congress enacted PAIMI in 1986 after finding individuals with mental illness "are subject to neglect, including lack of treatment, adequate nutrition, clothing, health care, and adequate discharge planning."   42 U.S.C. § 10801(a)(3).   PAIMI helps protect and advance the

---

2 *See* Dkt. 24.

**MEMORANDUM DECISION AND ORDER- 3**

interests of those with mental illness by requiring, as a condition of federal funding, that states establish P&A systems with authority to investigate and remedy suspected abuse or neglect.   42 U.S.C. § 10803.   Under PAIMI, states may designate either an independent state agency or a private entity as their P&A.   42 U.S.C. § 10802(2).   DRI, a private entity, is Idaho's designated P&A system.   (Dkt. 31-2, ¶ 8.)

Under PAIMI, DRI has the power to "pursue administrative, legal, and other appropriate remedies to ensure the protection of individuals with mental illness who are receiving care or treatment in the state."   42 U.S.C. § 10805(a)(1)(B).   To further these objectives, DRI has extensive authority to access individuals, patient records, and public and private facilities.3   42 U.S.C. 10805(a)(3); *see also Alabama Disabilities Advocacy Program v. J.S. Tarwater Developmental Ctr.*, 97 F.3d 492, 497 (11th Cir. 1996) (hereinafter "*Tarwater*")("It is clear that [PAIMI] provides express authority for P&As to gain broad access to records, facilities, and residents to ensure that [PAIMI's] mandates can be effectively pursued.").

When incidents of abuse and neglect of individuals with mental illness are either reported to a P&A, or where the P&A has probable cause4 to believe such incidents have occurred, a

---

3 The P&A mandate under PAIMI extends to "individuals with mental illness" who are an inpatient or resident in a facility rendering care and treatment.   42 U.S.C. § 10802(4)(B)(i).   Such "facilities" include, but are not limited to, "hospitals" and "community facilities for individuals with mental illness."   42 U.S.C. § 10802(3).

4 For purposes of PAIMI, "probable cause" is defined as:

[R]easonable grounds for belief that an individual with mental illness has been, or may be at significant risk of being subject to abuse or neglect.   The individual making such determination may base the decision on reasonable inferences drawn from his or her experience or training regarding similar incidents, conditions or problems that are usually associated with abuse or neglect.

**MEMORANDUM DECISION AND ORDER- 4**

P&A such as DRI shall, "in accordance with section 10806 … have access to all records of … any individual who is a client of the system if such individual, or the legal guardian, conservator, or other legal representative of such individual, has authorized the system to have such access."

42 U.S.C. § 10805(A)(4). PAIMI further provides the P&A shall have access to all records of:

> any individual (including an individual who has died or whose whereabouts are unknown)
> (i)     who by reason of the mental or physical condition of such individual is unable to authorize the system to have such access;
> (ii)    who does not have a legal guardian, conservator, or other legal representative, or for whom the legal guardian is the State; and
> (iii)   with respect to whom a complaint has been received by the system or with respect to whom as a result of monitoring or other activities (either of which result from a complaint or other evidence) there is probable cause to believe that such individual has been subject to abuse or neglect.

42 U.S.C. § 10805(B).

Although § 10805 does not define the term "records," several courts have concluded the definition of "records" in § 10806 is applicable to the term as used in § 10805. *See Pennsylvania Prot. & Advocacy, Inc. v. Houstoun*, 228 F.3d 423, 426 (3d Cir. 2000); *Connecticut Office of Prot. and Advocacy for Persons with Disabilities v. Hartford Bd. of Educ.*, 355 F.Supp.2d 649, 660 (D. Conn. 2005); *Iowa Prot. and Advocacy Services, Inc. v. Gerard Treatment Programs, L.L.C.*, 152 F.Supp.2d 1150, 1160 (N.D. Iowa 2001); *Ctr. for Legal Advocacy v. Hammons*, 323 F.3d 1262, 1272 n. 7 (10th Cir. 2003) ("We agree with the Third Circuit that §§ 10805 and 10806 should not be read in isolation. Section 10806 amplifies and describes what kind of records are included in those records to which a P&A System has access under § 10805[.]"). Therefore, for purposes of the relevant provisions of PAIMI, the term

---

42 C.F.R. § 51.2.

**MEMORANDUM DECISION AND ORDER- 5**

"records" includes:

> Reports prepared by any staff of a facility rendering care and treatment or reports prepared by an agency charged with investigating reports of incidents of abuse, neglect, and injury occurring at such facility that describe incidents of abuse, neglect, and injury occurring at such facility and the steps taken to investigate such incidents, and discharge planning records.

42 U.S.C. § 10806(b)(3)(A).

In this case, it is undisputed that D.T. was a patient involuntarily committed at an inpatient psychiatric hospital located in Boise in or about March, 2014.   (Dkt. 5, ¶ 32; Dkt. 8, p. 3.)   As such, D.T. meets the definition of an "individual with mental illness" who was an inpatient or resident in a "facility" rendering care and treatment pursuant to PAIMI.   *See* 42 U.S.C. § 10802(4)(B)(i)(I), § 10802(3).   It is also undisputed that D.T. committed suicide while receiving psychiatric care and treatment at the hospital.   (Dkt. 5, ¶ 33; Dkt. 8, pp. 3-4.)   The primary issue in this case is thus whether the Coroner can be considered "an agency charged with investigating reports of incidents of abuse, neglect, and injury" occurring at a facility for patients with mental illness.   DRI contends the records the Coroner compiled in the course of the investigation of D.T.'s death fall within the "records" definition enumerated within PAIMI. Ada County and the Coroner counter the Coroner is not an "agency" as used in the definition of "records" under PAIMI, and that DRI is accordingly not entitled to the Coroner's records.

### STANDARD OF REVIEW

The Court should grant summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.   Fed. R. Civ. Proc. 56(c).   If the moving party shows that there are no genuine issues of material fact, the nonmoving party must go beyond the pleadings and designate facts showing an issue for trial.   *Celotex Corp. v. Catrett*,

**MEMORANDUM DECISION AND ORDER- 6**

477 U.S. 317, 322-23 (1986).   A mere scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact.   *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

The substantive law governing a claim determines whether a fact is material.   *T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).   The court should resolve reasonable doubts about the existence of a material fact issue against the moving party, and should view inferences drawn from the facts in the light most favorable to the nonmoving party.   *Id*. at 631.   Where, as here, the parties have filed cross-motions for summary judgment, many of the facts are not contested.   When no genuine issue of material fact exists, the sole question is whether the moving party is entitled to judgment as a matter of law.   Fed. R. Civ. Proc. 56(c).

As an alternative to summary judgment, DRI seeks dismissal pursuant to Federal Rule of Civil Procedure 12(h)(3) of the Coroner and Ada County's Complaint for lack of standing and subject matter jurisdiction, and judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) and 17(a) because the Coroner and County have failed to allege the existence of a "substantial controversy" between the parties which would entitle them to declaratory relief. (Dkt. 31-1, pp. 8-16.)   The Court finds both requests misplaced.   The Court has federal question jurisdiction under 28 U.S.C. § 1331 as it pertains to 42 U.S.C. § 1983 and PAIMI, 42 U.S.C. § 10801, et. seq.   *See also* Dkt. 24.   This suit involves the Coroner's purported legal obligation to provide records to DRI under PAIMI, and thus provides the Coroner with standing to assert its claims.   Further, the judgment in this case will serve a useful purpose in clarifying the Coroner's

**MEMORANDUM DECISION AND ORDER- 7**

duty to provide DRI with requested records and will terminate and afford relief from the

uncertainty, insecurity and controversy giving rise to this proceeding.   A declaratory judgment

is accordingly justiciable and the Declaratory Judgment Act, 28 U.S.C. § 2201(a) provides

additional basis for federal jurisdiction.   *See Bilbrey v. Brown*, 738 F.2d 1462, 1470 (9th Cir.

1984).   The Court will not further address DRI's requests for dismissal and judgment on the

pleadings, and instead proceeds solely to the issue of whether or not DRI is entitled to the

records it seeks as a matter of law.5

## ANALYSIS

The crux of this dispute is DRI's right to access the records from the Coroner's

investigation of D.T.'s death.   DRI contends it has authority under PAIMI to access the

Coroner's investigatory records pertaining to the death of D.T.   The Coroner responds that

DRI's reading of PAIMI is overbroad and that DRI's right of access to records under PAIMI

does not extend to records of a death investigation undertaken by a county coroner.   The

Coroner further suggests that release of D.T.'s records to DRI would violate the privacy rights of

---

5 The Court will, however, grant DRI's request that Ada County be dismissed
from this case pursuant to Federal Rule of Civil Procedure 12(c) and 17(a) because it is
not a real party in interest.   As DRI notes, the County has not had any involvement,
interest, or stake in the events alleged in this matter or in the controversy alleged in the
Complaint.   Instead, only the Coroner has any involvement in the matters alleged, and
only the Coroner will be required to release records if the Court so orders.   Ada County
failed to respond to this argument in its response to DRI's Motion for Summary
Judgment.   The Court accordingly finds the issue waived and dismisses Ada County
from this action. *Image Technical Serv., Inc. v. Eastman Kodak Co.*, 903 F.2d 612, 615 n.
1 (9th Cir. 1990); *Reliance Ins. Co. v. Doctors Co.*, 299 F.Supp.2d 1131, 1154 (D. Haw.
2003) ("Failure to raise issues in opposition to summary judgment functions as a waiver"
of the argument); *Samica Enters. LLC v. MailBoxes Etc., Inc.*, 460 Fed. App'x 665, 666
(9th Cir. 2011) (arguments not raised in opposition to summary judgment are waived.).

**MEMORANDUM DECISION AND ORDER- 8**

the decedent and various third parties, and that releasing such records would subject the Coroner to liability.   The Coroner also challenges certain aspects of DRI's request for records in this case, including DRI's probable cause determination with respect to D.T. and the absence of consent from D.T.'s legal guardian(s).   Finally, the Coroner challenges DRI's right to relief under 42 U.S.C. § 1983.   The Court will address each of these issues in turn.

## 1.  Access to the Coroner's Records under PAIMI

DRI contends any records created by the Coroner as a result of his investigation into the death of D.T. qualify as "records" to which DRI is entitled access pursuant to PAIMI. Specifically, DRI argues the Coroner's records constitute "reports prepared by an agency charged with investigating reports of incidents of abuse, neglect or injury occurring at [a mental health] facility."  42 U.S.C. § 10806(b)(3)(A).   The Coroner maintains a "plain reading" of PAIMI clearly shows that it does not apply to the Coroner's records.   (Dkt. 32-1, p. 8.)   First, the Coroner argues its records do not meet the definition of "records" found in § 10806 because the Coroner is not a "facility" as used in the definition of "records."   In support of this argument, the Coroner notes it is "not a hospital, nursing home, community facility for individuals with mental illness, a board and care home, homeless shelter, or a jail or a prison, nor does it render care and treatment."  (Dkt. 32-1, pp. 8-9)   The fact that the Coroner is not a "facility" is immaterial; the potential abuse or neglect took place at a local hospital, and the hospital clearly meets the definition of a facility.   42 U.S.C. § 10802(3) (defining "facility" to include "hospitals, nursing homes, community facilities for individuals with mental illness, board and care homes, homeless shelters, and jails and prisons.").   Moreover, DRI does not claim it is entitled to the Coroner's records under the first portion of § 10806(b)(3)(A), "reports

**MEMORANDUM DECISION AND ORDER- 9**

prepared by any staff of a facility rendering care and treatment," and nowhere suggests the Coroner is a "facility" under PAIMI.   Instead, DRI contends it is entitled to the Coroner's records under the second, disjunctive portion of § 10806(b)(3)(A), because the Coroner is an "agency charged with investigating reports of incidents of abuse, neglect and injury occurring at such facility."

Second, the Coroner argues it is not an "agency" as used in the definition of "records," found in § 10806(b)(3) because:

> The term 'agency' in its common usage is defined as the office or function of an agent; an establishment engaged in doing business for another; an administrative division (as of a government)….   The Ada County Coroner is none of these.   The Coroner is not an administrative division of the government, it does not engage in doing business for another, nor does it have the function of an agent.   The Coroner is an independent, elected office pursuant to the laws and constitution of the state of Idaho, and determines the cause and manner of death.

(Dkt. 32-1, p. 9).6

When interpreting the language of a statute, the starting point is always the language of the statute itself.   *Yocupicio v. PAE Group, LLC*, 795 F.3d 1057, 1060 (9th Cir. 2015) (citation omitted).   If the language is clear and unambiguous, the plain meaning of the statute controls. *Id*.   In ascertaining the plain meaning of the statute, the court must look not only to the specific provision at issue, but also to "the structure of the statute as a whole, including its object and policy."   *Id*.   If a court finds ambiguity, it should "examine the statute in the context of the entire statutory scheme, reason, and public policy to effect a construction that reflects the Legislature's intent."   *Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc*., 778 F.3d 1059, 1081

---

6 Citing Merriam-Webster.com; http://www.merriam webster.com/dictionary/agency.

(9th Cir. 2015) (citation omitted); *see also United States v. Ron Pair Enters., Inc*., 489 U.S. 235, 241 (1989) (when "the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters … the intention of the drafters, rather than the strict language, controls."); *In re HP Inkjet Printer Litig*., 716 F.3d 1173, 1181 (9th Cir. 2013) (a statute's meaning was clear when "interpreted collectively and in context, and read together with the statute's purpose and legislative history.").

The parties do not dispute that the Coroner is charged by applicable Idaho statute with investigating reports of certain deaths, such as D.T.'s death by suicide. *Compare* Dkt. 32-1, p. 10 (noting pursuant to I.C. § 19-4301, the Coroner is charged with investigating deaths which occur as a result of violence, whether by homicide, suicide or accident) *with* Dkt. 31-1, p. 23 ("According to Idaho code, a county coroner is charged with the investigation of deaths, including those resulting from suicide or accident.")   What this Court must determine is whether a rational and logical reading of PAIMI permits the conclusion that the Coroner's records constitute "reports prepared by an *agency* charged with investigating reports of incidents of abuse, neglect and injury[.]"   42 U.S.C. § 10806(b)(3)(A).

Neither the PAIMI Act nor the implementing regulations define the term "agency."   Nor have courts interpreted "agency" within the context of § 10806 in any published decision.   In apparently the only case to consider the issue of whether PAIMI extends to the records of a county coroner, the Eastern District Court for the District of Wisconsin found Wisconsin's P&A was entitled to such records under the clear meaning of the statute in an unpublished decision. *Wisconsin Coal. for Advocacy, Inc. v. Barry Busby*, Case No. 02-C-871 (E.D. Wis. September 24, 2003) (Dkt. 1-12).   In so holding, the court explained:

**MEMORANDUM DECISION AND ORDER- 11**

A coroner's office is an agency charged with investigating deaths (certainly a form of injury), including deaths of individuals with mental illnesses that are the result of abuse and neglect.   The definition of the word 'agency' includes 'a person or thing through which power is exerted or an end is achieved,' as well as 'an administrative division (as of a government)'…. The duty to investigate reports of incidents of abuse, neglect and injury occurring at facilities covered by [PAIMI] is implicit in the broader duty of a coroner to investigate suspicious deaths within his or her jurisdiction.

*Id*. at 12 (citing Merriam-Webster's Collegiate Dictionary 22 (10th ed. 1999)).

The Coroner suggests the absence of published cases regarding this issue supports the position that PAIMI and its regulations were not meant to apply to coroners' offices.   (Dkt. 32-1, p. 10 n. 13.)   However, as DRI notes, the dearth of cases to address the issue could also mean that other county coroners "simply comply with the provisions of the PAIMI Act and provide a P&A with their records when requested, thereby negating the need for federal litigation."   (Dkt. 39, p. 2, n. 1.)   In any event, the Court finds the rational offered by the *Busby* decision persuasive, as both the plain meaning of § 10806 and the legislative intent of PAIMI suggest DRI is entitled to the Coroner's records.

The Coroner can be considered an "agency" under the plain meaning of § 10806 because the definition of the word "agency" includes an administrative division of government.     Idaho coroners are granted authority from both Idaho statute and the Idaho constitution.   *See* Idaho Const. art. 18, § 6; I.C. § 31-2801 et. seq.; I.C. § 19-4301.   The Ada County government decides the pay of the Coroner's office deputies and pathologist, and pays them from county funds.   I.C. § 31-2809.     The Ada County commissioners have the power to remove the Coroner or confirm a coroner appointed by the executive.   I.C. § 31-5213.   The Coroner's budget is paid from Ada

**MEMORANDUM DECISION AND ORDER- 12**

County's general fund.7   The Coroner is also a governmental entity charged with investigating suspicious deaths.   I.C. § 19-4301(1).   Each of these facts suggest the Coroner administers certain business of the county.

An Idaho Supreme Court decision also supports the finding that the Ada County Coroner is an administrative division of government.   In *Dep't of Emp't v. Ada Cnty. Fair Bd.*, 532 P.2d 933 (Idaho 1974), the court considered whether the Ada County Fair Board could be considered "an administrative division of county government."   *Id.* at 593-95.   Like the Coroner's officer, the Fair Board was statutorily authorized, was funded in Ada County's budget, the county commissioners had the power to select the Board's members, and the Board's funds ultimately belonged to the general fund of Ada County.   The Idaho Supreme Court noted that Ada County held ultimate control over the Fair Board's existence and thus, the Fair Board was an administrative division of Ada County.   Further "[a]s an inseparable part of Ada County, services performed by the Fair Board ipso facto are performed in the county's employ."   *Id.* at 594.   The Coroner is similarly a division of Ada County responsible for investigating deaths.

Further, that the Coroner is elected rather than appointed or hired is not dispositive.   The Coroner has not cited any cases or other authority to suggest whether an entity is a division of government turns on whether the head of the office was elected.   Indeed, if this were the case, administrative entities such as the Ada County Highway District would not be considered an administrative division of government simply because its commissioners are elected.   What is

---

7 *See* Ada County State of Idaho, 2014-2015 Ada County Final Budget ("Ada County Budget"),
https://adacounty.id.gov/Portals/0/CAR/Financia/Ada%20County%20FY15%20Adopted%20Budget.pdf.

**MEMORANDUM DECISION AND ORDER- 13**

significant is not whether an entity's director is elected, but is instead the role an entity

fulfills—in this case, an official role to administer certain business of the county.   *See, e.g.*, Dkt.

32-1, pp. 9-11 (listing various responsibilities of the Coroner).   The Coroner's office is properly

viewed under the clear terms of PAIMI as an "agency charged with investigating" because

"investigating" is what it exists to do, regardless of how the Coroner acquired the position.

In addition to the plain meaning of § 10806, the legislative intent behind the statute

illustrates DRI is entitled to the Coroner's records in this case.   The PAIMI legislative history

indicates that the term "agency" refers to "*any State, county, or municipal* agency charged with

the responsibility of investigating incidents of abuse and neglect in public residential facilities

for the treatment of mentally ill individuals."   S.2393, 100th Cong., 134 Cong. Rec. S14450-03,

1988 WL 180662; S.2393, 100th Cong., 134 Cong. Rec. H9648-01 (1988), 1988 WL 177000

(emphasis added).   The Coroner is a county entity charged with the responsibility of

investigating suspicious deaths, wherever they may occur.   Moreover, the P&A system was

designed to ensure that individuals with disabilities are protected from abuse and neglect

wherever they receive treatment.   *See* S. Rep. No. 99-109 at 10 (1985), reprinted in 1986

U.S.C.C.A.N. 1361, 1370 ("The Committee recognizes the need for full access to facilities and

clients and to their records in order to ensure the protection of mentally ill persons.   It is the

intent of the Committee that the [P&A] system *have the fullest possible access to client

records*….") (emphasis added).   Denying DRI access to the Coroner's records would undermine

this intent.

Interpreting "agency charged with investigating" to include a coroner's office is also

consistent with the purpose of PAIMI.   Congress enacted PAIMI as an "independent check" on

**MEMORANDUM DECISION AND ORDER- 14**

existing state systems designed to investigate abuse and neglect of the mentally ill.   *Iowa Prot. and Advocacy Services, Inc. v. Rasmussen*, 206 F.R.D. 630, 639 (S.D. Iowa 2001); 42 U.S.C. § 10801(a)(4).   Under PAIMI, P&A's are given broad authority to investigate incidents of abuse and neglect of individuals with mental illness and to pursue administrative, legal, and other remedies on behalf of those individuals.   42 U.S.C. § 10805(a)(1).   To achieve those objectives, PAIMI requires that the P&A have access to "all records" of any individual who meets the criteria of § 10805(a)(4)(A) or, as in this case, of § 10805(a)(4)(B).   Access to autopsy and other death investigation reports is essential to this task, as these reports contain the best, and sometimes only, evidence as to the precise cause of death.   Without such information, the ability of DRI to conduct a full investigation into the death of D.T. would be severely limited.   *See Busby*, at 13.

Other courts to interpret various aspects of the "records" a P&A is entitled to under PAIMI have also interpreted the provision broadly.   For example, the Seventh Circuit rejected the Wisconsin Department of Public Instruction's ("DPI") similar attempt to deny it was an "agency charged with investigating" in order to avoid producing records under PAIMI in *Disability Rights Wisconsin, Inc. v. Wisconsin Dep't of Public Instruc.*, 463 F.3d 719, 726-27 (7th Cir. 2006).   In so holding, the Court explained:

> The argument that DPI itself is not an agency charged with investigating reports of abuse or neglect is … beside the point.   For starters, DPI did in fact investigate complaints of potential abuse or neglect at [a facility].   And in the end, it is up to [the P&A] to determine whether abuse did in fact occur; preventing [the P&A] from obtaining the information it needs to investigate on the basis that DPI did something it was not required to do frustrates the goals of the federal P&A system.

*Id*.

The Third Circuit interpreted § 10805 expansively in *Pennsylvania Prot. & Advocacy,*

**MEMORANDUM DECISION AND ORDER- 15**

*Inc. v. Houstoun*, 228 F.3d 423, 427 (3d Cir. 2000), and determined a state P&A was entitled to

peer review reports prepared by a hospital despite the hospital's contention that such reports

were not "records of any individual" under § 10805 because peer review reports belong to the

hospital, and not to an individual patient. The Court rejected the hospital's contention, and

determined the preposition "of" in § 10805 "may be used to show connection or association as

well as ownership, and it seems clear that the term is used in the former sense here."   (citation

omitted). The Third Circuit determined the state P&A was entitled to peer review reports

prepared by a hospital, despite the hospital's contention that such reports were not records "of

any individual," because peer review reports pertain to a patient, regardless of whether they were

prepared by a hospital.  *Id.* at 427.

        In *Ctr. for Legal Advocacy v. Hammons*, 323 F.3d 1262 (10th Cir. 2003), a facility

similarly denied a P&A access to peer review and quality assurance records.   The facility in

*Hammons* argued § 10805 of PAIMI grants access to all records of patients, which do not

include peer review or quality assurance records, and § 10806 grants access only to certain

records of hospitals and agencies, so that § 10805's arguably expansive language (providing

access to "all records of … any individual") is inapplicable to § 10806, and does not compel the

conclusion that peer review and quality assurance records are hospital records under § 10806.

*Id.* at 1267.   The Tenth Circuit rejected this interpretation of the statute, finding Colorado's

P&A should have access to peer review and quality assurance records.   In so holding, the Court

explained:

> We begin by noting that the statutory phrase 'all records of…any individual' is quite
> broad.   While defendants urge us to follow the district court and find that this addresses
> only 'patient records,' and not 'hospital records,' and peer review and quality assurance
> records are not 'patient records' because they do not 'belong' to the patient, we agree

**MEMORANDUM DECISION AND ORDER- 16**

with the Third Circuit's observation that 'of' in this context need not be read so narrowly.
 Thus, a rational reading is that it refers to records pertaining to or relating to an
individual…   Peer review or quality assurance records involving the care of an
individual could easily fit within that definition of records, *along with myriad other
records relating to an individual and/or his or her care*.

*Id*. at 1270 (citing *Houstoun*, 228 F.3d at 427) (emphasis added).

Correspondingly, the term "agency" should not be interpreted as narrowly as the Coroner

suggests.   As the Department of Justice argues in its Statement of Interest:

Interpreting 'agency charged with investigating' to include a coroner's office is
consistent with the purpose of PAIMI.   One tool at the P&A's disposal is the ability to
obtain records to aid in its investigation.   Coroner's offices are in a unique position to
provide indispensable evidence in an investigation and may be the only entities that
perform a detailed examination of the decedent's body.   If coroners can withhold their
records, an important investigatory tool will be lost to the P&As, and their ability to
investigate will be compromised.   That is not what Congress intended.

(Dkt. 40, pp. 12-13.)

In sum, the records the Coroner compiled in its investigation of D.T.'s death fall within

the definition of "records" found in 42 U.S.C. § 10806(b)(3)(A).   The Coroner can be

considered an "agency charged with investigating" under the plain meaning of the statute, and

this interpretation is consistent with the congressional purpose underlying PAIMI.

## 2.  Privacy Issues

The Coroner contends it may be liable for disclosing private facts about an individual

under Idaho and federal law, and that the personal privacy rights of D.T. and D.T.'s family

members, as well as the personal privacy rights of hospital employees and family members

mentioned in the Coroner's records, preclude the Coroner from providing its investigative

records to DRI.   (Dkt. 32-1, pp. 11-14.)   Although the Court appreciates the Coroner's

concerns, federal cases interpreting PAIMI establish such fears are unfounded.

**MEMORANDUM DECISION AND ORDER- 17**

Under its express terms, PAIMI preempts any state law, including any state privacy laws, which would give the Coroner the right to withhold D.T.'s records from DRI.   42 U.S.C. § 10806(b)(2)(C).   Federal courts interpreting PAIMI have consistently concluded that the access to records provided by PAIMI preempts state law providing greater restrictions on access. *See Houstoun*, 228 F.3d at 427 ("PAIMI preempts any state law that gives a healthcare facility the right to withhold such records); *Coal. for Advocacy, Inc. v. Czaplewski*, 131 F.Supp.2d 1039, 1048 (E.D. Wis. 2001) ("[I]f there is a conflict between the federal statutes and the state statute with respect to the agency/system's authority to have access to the records of an individual with developmental disabilities or mental illness, it is the federal statutes which control.   To hold otherwise would fly in the face of the Supremacy Clause of the Constitution."); *Rasmussen*, 206 F.R.D. at 639 ("Protection and advocacy systems are established as independent checks on state care and regulation of care for dependent adults.   That independent check would become meaningless if a state was allowed to simply legislate away a protection and advocacy system's power to investigate by enacting restrictions."); *Advocacy Ctr. v. Stalder*, 128 F.Supp.2d 358, 367 (M.D. La. 1999) (The authority to investigate "would mean nothing and advocacy in the form of investigation would be ineffective" if federal law did not preempt state law denying access); *Mo. Protection and Advocacy Services v. Mo. Dep't of Health*, 447 F.3d 1021, 1024 (8th Cir. 2006) (PAIMI preempts conflicting state law).   To the extent Idaho privacy law prevents the release of the Coroner's records, PAIMI preempts such law and mandates that the Coroner release such records to DRI.

The Coroner's concerns about federal privacy rights are also addressed by PAIMI. Specifically, PAIMI requires the P&A to maintain records in a confidential manner:

**MEMORANDUM DECISION AND ORDER- 18**

An eligible [P&A] system which, pursuant to section 10805(a)(4) of this title, has access to records which, under Federal or State law, are required to be maintained in a confidential manner by a provider of mental health services, shall, except as provided in subsection (b) of this section, maintain the confidentiality of such records to the same extent as is required of the provider of such services.

42 U.S.C. § 10806(a).8

Courts interpreting PAIMI have repeatedly determined that privacy concerns should not act as a bar to disclosure to a protection and advocacy system because PAIMI provides sufficient confidentiality protection. *Czaplewski*, 131 F.Supp.2d at 1052 (allowing the P&A access to records of nursing home patients would not unduly intrude on their privacy rights because PAIMI requires the P&A to keep such records confidential); *Stalder*, 128 F.Supp.2d at 366 (concluding the confidentiality of records would not be affected because the P&A is required to maintain the confidentiality of the records under PAIMI and "there is no reason to suspect that the confidentiality of the records will be breached."); *Iowa Prot. and Advocacy Services, Inc. v. Gerard Treatment Programs*, 152 F.Supp.2d 1150, 1175 (N.D. Iowa 2001) ("Nor can [the facility] realistically argue that an interest in maintaining confidentiality of the records outweighs permitting [the P&A] to have the access it seeks…because [the P&A] must maintain the confidentiality of any records to the same extent [the facility] itself must."); *Tarwater,* 97 F.3d at 499 (no liberty interest of the developmentally disabled person is threatened by disclosure of records to the P&A because it is precisely that interest that the P&A seeks to protect); *Disability Rights Wisconsin,* 463 F.3d at 729-30 ("The point of the federal P&A statutes is to establish and equip a specialized agency to look out for individuals with mental illness. Confounding the agency in the name of an illusory concern for privacy defeats that very

---

8  P&A's are also required to maintain confidentiality under 42 C.F.R. § 51.45.

**MEMORANDUM DECISION AND ORDER- 19**

important goal.").

This analysis not only extends to the privacy rights of the individual with mental illness, but also to the privacy rights of their family members.   *See, e.g., Connecticut Office of Prot. and Advocacy for Persons with Disabilities v. Hartford Bd. of Educ*., 355 F.Supp.2d 649, 664 (D. Conn. 2005) (allowing P&A systems access to records in the limited circumstances provided for in PAIMI does not contravene Congress' intent to maintain parents' confidentiality); *Tarwater,* 97 F.3d at 497-99 (neither students with disabilities nor their parents are harmed when a P&A agency is permitted access to students' records); *Disability Rights Wisconsin*, 463 F.3d at 730 (privacy interests are outweighed by a P&A's broad mandate to investigate and remedy suspected abuse and neglect).   The aforementioned cases illustrate the Coroner's concern with violating federal privacy rights is unfounded.   The strict statutory requirement that DRI keep any records confidential defeats any alleged privacy concerns raised by the Coroner.

Despite both the express mandate of PAIMI that P&As keep records confidential and the wealth of cases holding disclosure to a P&A does not violate privacy rights, the Coroner maintains "there is a concern over the initial release to DRI—simply releasing the Records to *anyone*, DRI or otherwise, raises privacy concerns."   (Dkt. 35, p. 8) (emphasis in original). The Seventh Circuit addressed a similar argument in *Disability Rights Wisconsin*, 463 F.3d at 728, and held that because both the P&A and the agency charged with investigating must observe similar confidentiality requirements, the case "at bottom" involved the "confidential exchange of information between two agencies" and "[g]iven the duty of confidentiality common to both organizations, [the P&A's] possession of the information seems no more troubling as a privacy matter than [the agency's] possession."   *Id*. at 729.   Similarly, the confidential exchange of

**MEMORANDUM DECISION AND ORDER- 20**

information between the Coroner and DRI fails to raise any additional privacy concerns.

Finally, the Coroner argues the outcome of this case will affect the Coroner's duty to disclose records in future cases and could significantly impact the effective administration of Idaho's state criminal justice system. (Dkt. 32-1, p. 14.) The Coroner fails to articulate exactly how being required to provide records pursuant to PAIMI would negatively impact either the Coroner or Idaho's criminal justice system. Nor does the Coroner identify any statutory or case law authority to support the claim that providing D.T.'s records to DRI would have such an unidentified negative impact. Further, as the Department of Justice notes in its Statement of Interest:

> The Coroner's speculation that disclosing its records will somehow compromise criminal investigations statewide misunderstands the effect of PAIMI access. The P&A does not confiscate the coroner's records, make them unavailable to the criminal justice system, or in any way interfere with the coroner's ability to do her job. Access means only that, and nothing precludes an Idaho coroner's office from continuing to fulfill its statutory duties while also complying with PAIMI.

(Dkt. 40, p. 17.)

The Court is not persuaded that the Coroner or the Idaho criminal justice system would be negatively impacted by requiring disclosure of records to DRI when PAIMI applies.

### 3. Conditions to DRI's Right to Access D.T.'s Records

#### a. *Legal Representative*

The Coroner suggests DRI is not entitled to D.T.'s records because the conditions of 42 U.S.C. § 10805 have not been met. Specifically, § 10805(a)(4)(B) of PAIMI provides that a state's P&A system shall have access to the records of:

> Any individual (including an individual who has died or whose whereabouts are unknown)

**MEMORANDUM DECISION AND ORDER- 21**

| (i) | who by reason of the mental or physical condition of such individual is unable to authorize the system to have such access; |
|-----|---|
| (ii) | who does not have a legal guardian, conservator, or other legal representative, or for whom the legal guardian is the State; and |
| (iii) | with respect to whom a complaint has been received by the system or with respect to whom as a result of monitoring or other activities (either of which result from a complaint or other evidence) there is probable cause to believe that such individual has been subject to abuse or neglect. |

42 U.S.C. § 10805(a)(4)(B).

The Coroner submits these conditions must exist prior to a P&A being allowed to access certain records, and that there is no evidence that D.T. did not have a legal guardian, conservator or other legal representative.   (Dkt. 38, p. 4.)   As DRI notes, however, cases have placed the burden of establishing the presence of a legal guardian, conservator, or other legal representative on the entity blocking a P&A's access.   (Dkt. 36, p. 11.)   As the court explained in *Hartford Bd. of Educ.*, 355 F.Supp.2d at 662, "[w]ithout the disclosure of the facility of the parents' names and addresses, it may be impossible for the P&A to contact those parents; at the very least, it might significantly delay the process."   As such, courts have ordered a facility blocking access to records to provide the P&A with the names of an individual's guardians, conservators or representatives, if any.   *Office of Prot. and Advocacy for Persons with Disabilities v. Armstrong*, 266 F.Supp.2d 303, 318 (D. Conn. 2003).   Placing the burden of identifying representatives on the facility is consistent with the PAIMI regulations, particularly 42 C.F.R. § 51.43, which provides:

> Denial or delay of access.
>
> If a P&A System's access to facilities, programs, residents or records covered by the Act or this part is delayed or denied, the P&A system shall be provided promptly with a written statement of reasons, *including, in the case of a denial for alleged lack of authorization, the name, address and telephone number of the legal guardian,*

**MEMORANDUM DECISION AND ORDER- 22**

> *conservator, or other legal representative of an individual with mental illness.*   Access
> to facilities, records or residents shall not be delayed or denied without the prompt
> provision of written statements of the reasons for the denial.

42 C.F.R. § 51.43 (emphasis added).

The Court appreciates that the Coroner, unlike a healthcare facility, is unlikely to have
information regarding D.T.'s legal representative or family members.   (Dkt. 38, p. 5, n. 5.)
However, that the Coroner lacks such information does not place an affirmative duty on DRI to
determine whether D.T. has family members or representatives before it can access D.T.'s
records.   Indeed, courts have determined PAIMI grants the P&A "overriding" authority to
obtain access to patients and their records, even where a guardian is identified and refuses to
permit the P&A access.   *Gerard Treatment Programs*, 152 F.Supp.2d at 1167-68 ("Reading the
plain language of § 10805(a)(4) of the PAIMI Act in the context of the statute and its legislative
history, the court concludes that this provision … provides that a P&A … is entitled to obtain
access to the records and patients necessary for its investigation, so long as other statutory
prerequisites are met, *regardless of the wishes of the guardian*.") (citation omitted) (emphasis
added).   It follows that DRI should have access here where there is no evidence to suggest D.T.
has a legal guardian, much less a guardian who objects to such access.   Moreover, under Idaho
law, even if D.T. had a guardian appointed on her behalf, the guardian's authority terminated
upon D.T.'s death, rendering any alleged guardian's consent ineffective and unnecessary.   I.C.
§ 15-5-306 ("[T]he authority and responsibility of a guardian for an incapacitated person
terminates upon the death of the guardian or ward.").

### b.  Probable Cause

The Coroner also objects to providing investigatory records on the grounds that DRI has
not proved it had probable cause to believe that D.T. was subject to abuse or neglect.   (Dkt.

**MEMORANDUM DECISION AND ORDER- 23**

32-1, p. 7, n. 9.)   As mentioned, P&A's have the authority to investigate incidents of abuse and

neglect of individuals with mental illness if the incidents are reported to the system or if there is

probable cause to believe that such incidents occurred.   42 U.S.C. § 10805(a)(1)(a);

§ 10801(b)(2)(B).

Federal cases are clear that the P&A is the final arbiter of probable cause, and that an

entity may not second-guess the P&A's probable cause determination in order to withhold

records.   In *Arizona Ctr. for Disability Law v. Allen,* 197 F.R.D. 689, 692 (D. Ariz. 2000), a

state behavioral health agency refused to allow a P&A access to records under PAIMI.     The

health agency withheld some files because it disagreed that there was probable cause to believe

abuse or neglect had occurred.   *Id.* at 691.   The court instead held that the P&A "is the final

arbiter of probable cause for the purpose of triggering its authority to access all records for an

individual that may have been subject to abuse or neglect."   *Id.* at 693.   In so holding, the court

noted, "[t]o conclude otherwise would frustrate the purpose of the P & A laws to establish an

effective system to protect and advocate for the rights of individuals with disabilities."   *Id.*   The

court further held: "Neither the P&A laws nor the regulations promulgated thereunder

contemplate that the state or a service provider will reevaluate the P&A's determination of

probable cause and deny access to the P&A because the state or service provider disagrees that

probable cause exists."   *Id.*   This position has been overwhelmingly agreed with by other

courts.   *See, e.g., Rasmussen*, 206 F.R.D. at 638 ("the statute is clear that it is the protection and

advocacy systems that shall make the relevant probable cause determination, as a result of its

'monitoring and other activities,' and *not* a state agency.") (emphasis in original); *Gerard*

*Treatment Programs,* 152 F.Supp.2d at 1159; *Tarwater,* 97 F.3d at 494-95; *Armstrong*, 266

**MEMORANDUM DECISION AND ORDER- 24**

F.Supp.2d at 321; *Prot. & Advocacy System, Inc. v. Freudenthal*, 412 F.Supp.2d 1211, 1219 (D.

Wyoming 2006); *Ohio Legal Rights Serv. v. Buckeye Ranch, Inc*., 365 F.Supp.2d 877, 887 (S.D.

Ohio 2005).   In short, DRI has determined probable cause exists to investigate D.T.'s death and

the Coroner is not permitted to challenge this conclusion.

  c. *Judicial review of probable cause determination*

  The Coroner also suggests this Court is ultimately the final decision-maker regarding

whether probable cause exists, and offers the Court the opportunity to review the investigatory

records of D.T.'s death *in camera* to assist with this determination.   (Dkt. 32-1, p. 4, n. 5; p. 7,

n. 9.)   The Coroner does not provide any authority to support its contention that the Court is the

final decision-maker regarding probable cause.   Moreover, cases interpreting PAIMI have

repeatedly held that a P&A's probable cause determination does not require judicial review.

*Armstrong*, 266 F. Supp.2d at 321 ("[C]ourts have rejected attempts to require judicial review of

the P&A's probable cause determination") (citations omitted); *Stalder*, 128 F.Supp.2d at 367

(state policy of requiring *in camera* inspection by a court before releasing records to the state

P&A clearly conflicted with PAIMI, would undermine P&A's ability to investigate a claim and

effectively advocate, and was preempted); *Maryland Disability Law Ctr., Inc. v. Mt. Washington

Pediatric Hosp., Inc*., 664 A.2d 16, 24 (Md. Ct. App. 1995) (finding it would be overly

burdensome and unnecessary to require a P&A to convince the court that probable cause exists

prior to having access to patients, personnel and records).   The Court accordingly declines the

Coroner's invitation to review DRI's probable cause determination.

  **4. DRI's right to relief under § 1983**

  In addition to declaratory and injunctive relief under PAIMI, DRI seeks attorney fees,

costs and expenses, and declaratory and injunctive relief under 42 U.S.C. § 1983.   Section 1983

provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of
> any State . . . subjects, or causes to be subjected, any citizen of the United States or other
> person within the jurisdiction thereof to the deprivations of any rights, privileges or
> immunities secured by the Constitution and laws, shall be liable to the party injured[.]

42 U.S.C. § 1983.

DRI claims that in failing to promptly grant it access to the records of his investigation of

D.T.'s death, the Coroner, while acting under color of state law, deprived DRI of a right

guaranteed by federal law.   The Coroner and DRI offer a number of arguments for and against

DRI's right to recover under § 1983.  9  However, even assuming DRI could establish a claim

under § 1983, the Seventh Circuit has held:

> Section 1983 fits awkwardly with the PAIMI Act because a protection and advocacy
> system has rights against both public and private care providers.   The latter would not
> act under color of state law and could not be reached under section 1983…. Because the
> PAIMI Act itself provides a cause of action for equitable relief, we decline to address
> [the P & A's] ability to pursue relief under 42 U.S.C. § 1983.

*Indiana Prot. and Advocacy Services v. Indiana Family and Social Services*

*Admin.*, 603 F.3d 365, 380 (7th Cir. 2010).

Just as PAIMI provides P&A's with rights against both public and private care providers,

a P&A may itself be either private or public.   As DRI notes, it is a private, non-profit

corporation.   (Dkt. 39, pp. 7-8.)   DRI highlights this distinction in order to defeat the Coroner's

---

9  Most significant of these arguments is the Coroner's position that DRI, as an
arm of the state, is not a "person" who may bring suit under § 1983. This position is
supported by *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989), wherein the
Supreme Court held that Congress did not intend for "person" in § 1983 to include the
sovereign for purposes of determining who may sue.   *See also Illinois v. City of Chicago*,
137 F.3d 474, 477 (7th Cir. 1998) (stating, based on *Will*, that the state cannot be a
plaintiff in a § 1983 suit).

**MEMORANDUM DECISION AND ORDER- 26**

argument that DRI is not entitled to relief under § 1983 because a state actor cannot sue another under § 1983. (Dkt. 35, p. 7) (citing *Virginia Office for Prot. and Advocacy v. Reinhard*, 405 F.3d 185, 189 (4th Cir. 2005) (… "[W]e nevertheless conclude that an arm of the state cannot bring suit under that statute [§ 1983]."). DRI suggests it is not a state agency because it is a private nonprofit, charitable 501(c)(3) corporation, and thus meets the definition of "person" entitled to relief under § 1983. (Dkt. 39, p. 9.) This argument further illustrates the problem with allowing DRI to recover under § 1983. Under DRI's reasoning, private P&A's would be entitled to relief against state entities under § 1983, while state P&A's would not, even though both allege a violation of PAIMI for failure to provide records. Although various federal courts have allowed P&A's to sue under § 1983, neither the Ninth Circuit nor the Supreme Court have apparently addressed the issue. In the absence of controlling authority, and because DRI is already entitled to relief under PAIMI, the Court here, like the Seventh Circuit, declines to further address DRI's ability to pursue relief under § 1983.

### 5.    Declaratory and Injunctive Relief

Finally, DRI seeks declaratory and injunctive relief against the Coroner. DRI requests the Court enter a declaratory judgment holding that DRI has the right to access the Coroner's investigatory records of D.T.'s death; that the Coroner's actions and inactions violated PAIMI, and that the Coroner must immediately give DRI access to the requested records. (Dkt. 31-1, p. 28). Although they seek opposite declarations, both parties agree declaratory relief is appropriate in this case, as declaratory relief is proper when a judgment will serve a useful purpose in clarifying and settling legal relations and when it will terminate and afford relief from uncertainty, insecurity, and controversy giving rise to the proceedings. *Bilbrey v. Brown*, 738

F.2d 1462, 1470 (9th Cir. 1984).   Given the Court's analysis with respect to DRI's right to

access the Coroner's records under PAIMI, DRI is entitled to the declaratory relief it seeks.

Thus, pursuant to 28 U.S.C. § 2201(a), the Court will enter the following Declaration:

> DRI is entitled to the Coroner's investigatory records of D.T.'s death under PAIMI, and
> the Coroner has violated PAIMI by withholding such records.   The Coroner must
> immediately give DRI access to the requested records.

> DRI also asks the Court to permanently enjoin the Coroner and her successors from

failing to provide to DRI any report, document, or other record relating to D.T., including those

records related to D.T.'s death and any investigation thereof, or relating to any other person who

is a client of DRI or whose records DRI is authorized to have access to under PAIMI or other

federal law; and otherwise interfering with any investigation of abuse and neglect authorized

under the PAIMI Act or other federal law.   (*Id.*, pp. 29-30.)   The Coroner denies an injunction

is appropriate and contends the Coroner's duty to disclose records under PAIMI must be

determined on a case-by-case basis.   (Dkt. 35, p. 9.)

A plaintiff seeking a permanent injunction must satisfy a four-factor test before a court

may grant such relief.   A plaintiff must demonstrate: (1) that it has suffered an irreparable

injury; (2) that remedies available at law, such as monetary damages, are inadequate to

compensate for that injury; (3) that the balance of hardships between the plaintiff and the

defendant warrants an equitable remedy; and (4) that the public interest would not be disserved

by a permanent injunction.10   *Monsanto Co. v. Geerston Seed Farms*, 561 U.S. 139, 156-57

---

10  These are also the relevant factors in determining whether to grant a
preliminary injunction, except a plaintiff seeking a preliminary injunction must establish
likelihood of success on the merits, while the movant seeking a permanent injunction
must actually attain success on the merits.   *Rasmussen*, 206 F.R.D. at 634 (citations
omitted); *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n. 12 (1987). Given the

**MEMORANDUM DECISION AND ORDER- 28**

(2010) (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)). The decision to grant or deny permanent injunctive relief is within the district court's broad discretion. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-313 (1982).

Numerous courts have concluded that a P&A's inability to meet its federal statutory mandate to protect and advocate on behalf of those with mental illness constitutes irreparable harm. *See, e.g.*, *Hartford Bd. of Educ.*, 355 F.Supp.2d at 653; *Alabama Disabilities Advocacy Program v. SafetyNet YouthCare, Inc.*, 65 F.Supp.3d 1312, 1326 (S.D. Alabama 2014) (finding P&A suffered an irreparable injury by being denied access to fulfill its statutorily authorized legal duty); *Gerard Treatment Programs*, 152 F.Supp.2d at 1173 (holding P&A was irreparably harmed by being prevented from pursuing fully its right to access records in pursuit of its duty to investigate); *Rasmussen*, 206 F.R.D. at 635; *Stalder*, 128 F.Supp.2d at 367; *Czaplewski*, 131 F.Supp.2d at 1051; *Buckeye Ranch, Inc.*, 365 F.Supp.2d at 883 ("There is no dispute that a protection and advocacy agency's inability to meets its federal statutory mandate to protect and advocate the rights of disabled people constitutes irreparable harm."). Having determined DRI is entitled to the Coroner's records under PAIMI, it follows that DRI has suffered immediate and irreparable harm through the Coroner's refusal to turn over the requested records.

DRI has also demonstrated that there is no adequate legal remedy available other than injunctive relief. The Coroner's refusal to provide DRI with the records that it is charged to review poses a threat to DRI being able to discharge its obligations, and no amount of damages will remedy such sustained harm. *Czaplewski*, 131 F.Supp.2d at 1051. The danger of future

_____

Court's finding that DRI is entitled under PAIMI to the records it here seeks, DRI has attained success on the merits.

**MEMORANDUM DECISION AND ORDER- 29**

violation is also certainly cognizable, as the Coroner maintains the disclosure of any private records must be determined on a case-by-case basis.   To require DRI to re-litigate each time it seeks to obtain access to the Coroner's records would impede DRI's ability to effectively investigate and would defeat the purpose of PAIMI.

The balance of hardships also favors DRI, as no harm will come to the Coroner's office by forcing them to comply with the provisions of PAIMI.   *Stalder*, 128 F.Supp.2d at 368 ("the court sees no harm that would come to the defendant by forcing them to comply with provisions of the PAIMI Act, a law adopted by the national legislature).   As the court held in *Stalder*, "[i]ssuance of a permanent injunction in this case does not subject the defendants to a penalty or a hardship since it requires them to do exactly what [PAIMI] requires, i.e., to comply with the law." *Id*.   Moreover, as at least one court has noted, a permanent injunction will actually benefit the Coroner's office because it will serve to protect them from legal action, as "defendants [can] hardly be punished for complying with federal court order."   *Czaplewski*, 131 F.Supp.2d at 1052.

The public interest also weighs in favor in permitting DRI to access the Coroner's records.   PAIMI sets forth a clear federal legislative mandate for P&A systems to investigate potential instances of abuse or neglect of individuals with mental illness.   42 U.S.C. § 10801(b).  It would undermine congressionally mandated independent review if P&A's were unable to review records such as those requested here in the name of illusory privacy concerns.

In light of the findings above, the Court hereby permanently enjoins the Ada County Coroner and her successors from failing to provide to DRI any report, document, or other record relating to D.T., including those records related to D.T.'s death and any investigation thereof, or

**MEMORANDUM DECISION AND ORDER- 30**

relating to any other person who is a client of DRI or whose records DRI is authorized to have access to under PAIMI.

### ORDER

**NOW THEREFORE, IT IS HEREBY ORDERED**:

1.  DRI's Motion to Dismiss, Motion for Judgment on the Pleadings, and Motion for Summary Judgment (Dkt. 31) is **GRANTED IN PART** and **DENIED IN PART**. DRI's motion is **DENIED** to the extent it seeks judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) and 17(a).   DRI's motion is also **DENIED** to the extent it seeks dismissal of the Coroner's Complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(h)(3).   DRI's motion is **GRANTED** to the extent it seeks dismissal of the County, and the County is hereby **DISMISSED**.   DRI's motion for summary judgment (Dkt. 31) is also **GRANTED IN PART** and **DENIED IN PART**.   DRI is entitled to summary judgment as a matter of law with respect to its right to access D.T.'s records under PAIMI.   DRI is also entitled to the declaratory and injunctive relief it seeks. DRI's motion for summary judgment is **DENIED** with respect to its right to recover under § 1983.

2.  Pursuant to 28 U.S.C. § 2201(a), the Court hereby declares DRI is entitled to the Coroner's investigatory records of D.T.'s death under PAIMI, and the Coroner has violated PAIMI by withholding such records.   The Coroner must immediately give DRI access to D.T.'s records.

**MEMORANDUM DECISION AND ORDER- 31**

3. The Court hereby permanently enjoins the Ada County Coroner and her successors from failing to provide to DRI any report, document, or other record relating to D.T., including those records related to D.T.'s death and any investigation thereof, or relating to any other person who is a client of DRI or whose records DRI is authorized to have access to under PAIMI.

4. The Coroner's Motion for Summary Judgment (Dkt. 32) is **GRANTED IN PART** and **DENIED IN PART**.   The Coroner's motion is **GRANTED** with respect to its liability under 42 U.S.C. § 1983.   The Coroner's motion is **DENIED** in all other respects.

DATED: March 7, 2016

Edward J. Lodge
United States District Judge

**MEMORANDUM DECISION AND ORDER- 32**